IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
Relator, Edward L. Fries, brings this action requesting that this court issue a writ of mandamus directing respondent Industrial Commission of Ohio ("commission"), to vacate its order denying his application for temporary total disability ("TTD") compensation, and to issue an amended order granting TTD compensation.
On September 19, 1989, relator was injured while employed as a "Hi-Lift Operator" for respondent Tastee Apple, Inc. Relator's claim was allowed for "lumbar and thoracic subluxations; lumbar sprain/strain; aggravation of pre-existing cervical disc disease; and aggravation of pre-existing lumbar spondylolisthesis." On April 27, 1998, relator was examined by psychologist, Dr. James M. Lyall, who opined that relator's claim should be additionally allowed for: "major depressive disorder, single episode, severe without psychotic features; pain disorder associated with both psychological factors and a general medical condition, chronic; and personality disorder, mixed, with antisocial passive/aggressive features." Dr. Lyall further opined that relator should engage in psychotherapy "within a period of six months to one year." He continued, "[i]f this individual receives appropriate mental health care there is every reason to believe that he will make significant improvement within a period of six months to one year. This is not to say that he will not need mental health treatment after that but logically we can infer that he will make a significant and maximum part of his improvement during this time period."
On May 13, 1998, relator moved for an additional claim allowance based upon Dr. Lyall's report. In response, the commission had relator examined by its own psychologist, Dr. Thomas A. Boyd. Dr. Boyd opined that relator suffered from a major depressive disorder which he qualified as "moderate." However, he did not feel that there was evidence which medically substantiated a further allowance for the condition of pain disorder, or for the allowance of an aggravation of a pre-existing personality disorder. Dr. Boyd continued, noting that the relator was not capable of returning to his former employment, nor was he currently capable of sustained remunerative employment. However, neither he, nor Dr. Lyall, specified any definite period of temporary total disability.
Following a December 7, 1998 hearing, relator's claim was additionally allowed for "major depressive disorder, pain disorder and aggravation of pre-existing personality disorder" based upon the report of Dr. Lyall. Thereafter, Barbara Schwartz, a licensed professional clinical counselor, certified temporary total disability from January 12, 1999, to an estimated return to work date of May 1, 1999.
On June 9, 1999, relator moved for an award of TTD compensation based upon Ms. Schwartz's C-84 and the report of Dr. Boyd. This application was denied by a district hearing officer ("DHO") for two reasons. First, the DHO concluded that the report of Dr. Boyd was implicitly rejected in favor of the report of Dr. Lyall. Second, the DHO concluded that Ms. Schwartz is not qualified to certify the duration of a claimant's disability. Relator subsequently filed this action on June 25, 2001.
On July 10, 2001, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, relator's complaint was referred to a magistrate of this court, who rendered a decision and recommendation which includes comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) Specifically, the magistrate concluded that the commission erred in holding that Zamora v. Indus. Comm. (1989),45 Ohio St.3d 17, prohibited the commission from considering Dr. Boyd's disability opinion when adjudicating relator's TTD application. The magistrate also concluded that Dr. Boyd's report could be used to support an award of TTD compensation, even though he did not certify TTD for any specific period of time. Finally, the magistrate concluded that Ms. Schwartz, the clinical counselor who prepared a C-84 certifying relator's disability period, is not in fact authorized by law to certify TTD. Accordingly, the magistrate concluded that this court should issue a writ of mandamus directing the commission to vacate its order denying relator TTD compensation "and to enter a new order, in a manner consistent with this magistrate's decision, that adjudicates relator's motion for TTD compensation." The matter is now before this court for ruling upon objections to that decision filed by the respondents on December 4, 2001, and by the relator on December 14, 2001.
Respondents object to the decision and recommendation of the magistrate on two grounds. First, respondents argue that the magistrate incorrectly interpreted Zamora. Respondents believe that Zamora stands for the proposition that once any portion of a medical report has been rejected for any reason, the remaining portions of the report cannot be used for any other reason whatsoever. Having carefully reviewed Zamora, as well as subsequent Ohio Supreme Court decisions on point, we are unable to agree.
In Zamora, the commission rejected a report which concluded that Zamora was moderately depressed, that his depression preceded his physical injury, and that the contribution of his physical injury to the depression was minimal, in favor of another report, which concluded that Zamora's depression was so severe that it rendered him permanently and totally disabled. Under those circumstances, the Ohio Supreme Court affirmed this court's conclusion that it would be inconsistent to allow the commission to reject the conclusion of the first report, only to resurrect that conclusion in order to rely upon it at a later time. This was so because the two reports were clearly and irrevocably inconsistent.
In State ex rel. Verbanek v. Indus. Comm. (1995), 73 Ohio St.3d 562, the Ohio Supreme Court recognized that medical reports are often comprised of discrete parts. The court explained that "[w]e recognize that the credibility of claimant's recited history does not depend on Boutouras' impairment assessment and is, thus, in a sense, severable from it." Id. at 563. Moreover, we agree with the magistrate's observation that the concept of severability underpins the well-settled view that the commission may reject the conclusion of a rehabilitation report and draw its own conclusion from the same medical information. See State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141. As such, respondents' first objection is overruled.
In their second objection, respondents argue that the magistrate incorrectly concluded that the commission can award TTD compensation based upon a record, or a medical report, that does not certify a period of disability. The Ohio Supreme Court has repeatedly explained that there must be some evidence in the record to support a decision of the commission. See State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203; and State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. In State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, the court explained in part:
 [W]e will, when necessary, henceforth grant a writ of mandamus directing the commission to specify the basis of its decision. * * * In other words, district hearing officers, as well as regional boards of review and the Industrial Commission, must specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested. Moreover, this court will no longer search the commission's file for "some evidence" to support an order of the commission not otherwise specified as a basis for its decision. [Id. at 483-484.]
In State ex rel. Yellow Freight System, Inc. v. Indus. Comm. (1998),81 Ohio St.3d 56, the Ohio Supreme Court explained:
 The receipt of TTD "rests on a claimant's inability to return to his or her former job as a direct result of an industrial injury." State ex rel. Pretty Products, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5, 6 * * *. The burden to prove these elements is the claimant's, State ex rel. Pleban v. Indus. Comm. (1977), 78 Ohio St.3d 406, 407 * * * and requires the production of affirmative evidence. Stated differently, the "lack of `some evidence' supporting the [commission's] denial of [TTD] does not automatically translate into `some evidence' supporting [the] award." State ex rel. Foor v. Rockwell Internatl. (1997), 78 Ohio St.3d 396, 398 * * *; State ex rel. Lampkins v. Dayton Malleable, Inc. (1989), 45 Ohio St.3d 14, * * *. [Id. at 57.]
The court continued explaining that:
 Fox [v. Indus. Comm. (1995), 162 Ohio St. 569] however, specifically requires direct medical testimony or other medical evidence to establish causation in proving a claimant's eligibility for workers' compensation.
* * *
 Without medical evidence, the commission has no basis to determine the cause of a medical condition — it simply does not have the expertise. * * * [Id. at 57-58.]
Our review of the applicable case law leads us to conclude that the disability period caused by a given medical condition is a medical issue which must be supported by "some" medical evidence. While the commission may properly choose between competing or conflicting medical views, it may not create a period of disability out of whole cloth. In this particular case, neither Dr. Boyd's nor Dr. Lyall's report contain evidence of any specific period of disability for the relator's allowed conditions. As such, we sustain respondents' second objection.
Finally, we find no error in the magistrate's conclusion that a clinical counselor is not authorized by law to certify TTD. R.C. 4123.56(A) provides that payments for TTD compensation "shall be for a duration based upon the medical reports of the attending physician." Additionally, Ohio Adm. Code 4123-5-18(A) provides that compensation shall not be approved by the commission in a claim unless supported by a report of a physician duly licensed to render medical treatment. For the foregoing reasons, as well as for the reasons set forth in the magistrate's decision, we find no error in the magistrate's conclusion that a clinical counselor is not authorized by law to certify TTD. Relator's objections are therefore overruled.
Based upon a thorough examination of the record, the magistrate's decision, as well as the objections, we conclude, as noted, that the magistrate correctly determined that a clinical counselor cannot substitute for a physician. The magistrate also correctly found, pursuant to Zamora and its progeny, that a rejection of a portion of a medical or rehabilitative report does not necessarily dictate that the entire report be removed from consideration. Therefore, we adopt in part and reject in part the November 20, 2001 decision of the magistrate. Because both Dr. Boyd and Dr. Lyall opined that relator is disabled, we hereby issue a writ directing the commission to vacate its order denying relator's TTD application, and to take additional evidence as to the period of relator's disability so that the commission may properly adjudicate relator's application.
Relator's objections overruled; respondents' objections
sustained in part and overruled in part; and writ granted.
BRYANT and LAZARUS, JJ., concur.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS
In this original action, relator, Edward L. Fries, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning September 15, 1998, and to enter an order granting said compensation.
Findings of Fact:
1. On September 19, 1989, relator sustained an industrial injury while employed as a "Hi-Lift Operator" for respondent Tastee Apple, Inc., a state-fund employer. The industrial claim was initially allowed for "lumbar and thoracic subluxations; lumbar sprain/strain; aggravation of pre-existing cervical disc disease; aggravation of pre-existing lumbar spondylolisthesis." The claim was disallowed for "transverse fracture of lateral portion of first rib on the left, and myofascitis L3 thru S1." The industrial claim is assigned number 89-33746.
2. On April 27, 1998, relator was examined by psychologist, James M. Lyall, Ph.D. Relator was referred to Dr. Lyall by his treating chiropractor. Dr. Lyall wrote:
CONCLUSIONS AND RECOMMENDATIONS
 It appears that we have a man who worked most of his life in low key manual labor jobs. He was working seasonally for the Tastee Apple Company in 1989 when he injured his lower back and hips. He has attempted to return to work a couple of times over the years in manual labor jobs. Unfortunately, he states that his back would always act up on him and he would not continue his work. He has not worked for the past two years. Emotionally, the claimant shows a severe level of depression at the present time. The claimant admits to sleep difficulties which he attributes to both pain and worry. He states that he has lost twenty pounds over the past year because of poor eating habits and a lack of desire to eat. He has had some thoughts of suicide but no intention or plan. The claimant reports no history of psychiatric disturbance prior to his 1989 industrial injury. The content of his depression revolves around his inability to do things because of his back injury and financial difficulties associated with his inability to work which of course in [sic] related to his Workers' Compensation claim. We also see significant preoccupation with pain and health problems with underlying passive/-aggressive characterological features. Such preoccupation with health difficulties is often seen in pain disorders associated with significant levels of depression. Based on the above, the following diagnostic impression is offered from DSM-IV.
 Axis I: 296.23 Major Depressive Disorder, single episode, severe without psychotic features.
 307.89 Pain Disorder associated with both psychological factors and a general medical condition, chronic.
 Axis II: 301.9 Personality Disorder, mixed, with antisocial passive/aggressive features.
* * *
 Ed is in need of mental health intervention to help him deal with the above described psychological difficulties. He might be referred to his family physician for the possible prescription of antidepressant medication. Such medication would serve the purpose to even out Ed's mood somewhat. Psychological intervention involving psychotherapy also needs to be conducted. Such counseling would serve to teach Ed cognitive behavioral techniques to help him deal with his depressive and anxiety features. Pain and stress techniques can also be taught in the confines of the counseling relationship. Counseling could be conducted within a period of six months to one year.
 This individual reports no previous psychiatric or psycho-logical difficulties prior to his 1989 injury. The claimant has never been treated for emotional conditions. The content of his feelings of depression revolve around his inability to do things associated with his back injury. He is also quite preoccupied with his financial condition and inability to find a job which again is associated with his 1989 back injury and the sequelae of that injury. As the claimant has no previous history of psychiatric disturbance and his current disturbance is closely linked in content to his 1989 injury. It is my belief that both his Major Depressive Disorder and his Pain Disorder are caused by his 1989 injury. In terms of the claimant's Personality Disorder, such disorders are long standing and in my opinion predates the claimant's 1989 injury. Certainly, however, his Personality Disorder was aggravated and continues to be aggravated by the 1989 injury.
 If this individual receives appropriate mental health care there is every reason to believe that he will make significant improvement within a period of six months to one year. This is not to say that he will not need mental health treatment after that but logically we can infer that he will make a significant and maximum part of his improvement during this time period.
3. On May 13, 1998, relator moved for commission recognition of additional claim allowances based upon Dr. Lyall's report.
4. Relator's motion prompted the Ohio Bureau of Workers' Compensation ("bureau") to have relator examined by psychologist, Thomas A. Boyd, Psy.D. Dr. Boyd examined relator on September 15, 1998, and wrote:
 The following conclusions are based on today's clinical examination and review of records. Diagnostic determinations are made according to the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition (DSM-IV) published by the American Psychiatric Association (1994). All opinions are rendered with reasonable psychological certainty.
 Mr. Fries has filed a motion requesting that his claim be additionally allowed for the conditions of Major Depressive Disorder, Single Episode, Severe without Psychotic Features (296.23), Pain Disorder Associated with Both Psychological Factors and a General Medical Condition (307.89), and Personality Disorder Not Otherwise Specified (301.9) with anti-social and passive/aggressive features. The 4-27-98 report of a psychological evaluation by Dr. Lyall was submitted in support of the motion.
 Based on my direct examination of Mr. Fries, I find evidence to support the diagnosis of Major Depression, although Mr. Fries does not exhibit a "severe" condition. I would diagnose him with Major Depressive Disorder, Single Episode, Moderate (296.22).
 I also find evidence to support the diagnosis of Pain Disorder Associated with Both Psychological Factors and a General Medical Condition (307.89). However, Mr. Fries' claim has been specifically denied for the condition of myofascitis at level L3 through S1. Given Mr. Fries' complaints of headache and rather generalized pain throughout his body, it cannot be established with reasonable psychological certainty that his pain disorder is a direct and proximate result of his allowed conditions of lumbar and thoracic subluxations; lumbar sprain/strain; aggravation of pre-existing cervical disc disease; aggravation of pre-existing lumbar spondylolisthesis.
 Finally, I would agree that Mr. Fries has a pre-existing personality disorder, probably best classified as Personality Disorder Not Otherwise Specified (301.9), and he clearly has a history of anti-social behaviors. There is no indication that this long-standing disorder has in any way been aggravated by his injury of 9-19-89.
 The following question was posed as part of this referral:
 * * * Based on the medical documentation and your clinical evaluation, is the requested further allowance of "Major Depressive Disorder; Pain Disorder; Aggravation of Pre-existing Personality Disorder" medically substantiated as a direct and proximate result of the original injury of 9-19-89.
 YES for Major Depression (although the allowed condition should be Major Depressive Disorder, Single Episode, Moderate (296.22)).
 NO for Pain Disorder Associated with Both Psychological Factors and a General Medical Condition (307.89).
 No for Aggravation of Personality Disorder Not Otherwise Specified (301.9).
 * * * Is the injured worker capable of returning to his former position of employment as a hi-lift operator?
 NO. Mr. Fries shows significant difficulties with attention and concentration, and a diminished level of energy which would prohibit him from resuming his previous employment.
 * * * If the answer to Question #2 is No, is it due to the allowed conditions in this claim?
 Solely from a psychological perspective, Mr. Fries' inability to return to his former employment is due to his depression.
 * * * Given the history and course of therapy being rendered, has the injured worker reached a level of maximum medical improvement?
 Mr. Fries has not engaged in any recent psychological or psychiatric treatment. He has not reached maximum medical improvement for his condition of major depression.
 * * * Is this injured worker capable of sustained remunerative employment activity?
 NO.
5. Following a December 7, 1998 hearing, a district hearing officer ("DHO") issued an order granting relator's motion for recognition of additional claim allowances. The DHO's order states:
 It is the order of the District Hearing Officer that the claim is additionally allowed for the conditions "major depressive disorder, pain disorder and aggravation of pre-existing personality disorder."
 This order is based on the 04/27/1998 report of Dr. Lyall who causally relates these conditions to the injury sustained in this claim.
6. Apparently, the DHO's order of December 7, 1998, was not admin-istratively appealed.
7. On April 6, 1999, Barbara H. Schwartz, a licensed professional clinical counselor (LPCC) completed and signed form C-84. On the C-84, Ms. Schwartz certified temporary total disability from January 12, 1999 to an estimated return-to-work date of May 1, 1999, based upon the three allowed psychological disorders.
8. On June 9, 1999, relator moved for TTD compensation from September 15, 1998 to the May 1, 1999 estimated return-to-work date based upon the Schwartz C-84 and Dr. Boyd's report.
9. Following a July 19, 1999 hearing, the DHO issued an order denying TTD compensation. The DHO's order states:
 It is the order of the District Hearing Officer that Temporary Total Compensation is specifically denied from 09/15/1998 through 01/11/1999 as the claimant has failed to provide probative medical evidence indicating that he was temporarily and totally disabled over this period.
 The claimant has relied on the 09/15/1998 Independent Medical Examination report of Dr. Boyd to establish disability over this period. However, Dr. Boyd's report was implicitly rejected by the District Hearing Officer's order of 12/07/1998. Therefore, pursuant to Zamora v. Industrial Commission (1989), 45 Ohio St.2d 17
as this report was rejected it cannot be relied upon for another issue.
 It is the order of the District Hearing Officer that Temporary Total Compensation is specifically denied from 01/12/1999 through 05/01/1999, inclusive.
 The District Hearing Officer finds that the C-84 was completed by Barbara H. Schwartz LPCC. Counsel for claimant indicated at hearing that Ms. Schwartz is a counselor.
 Pursuant to Ohio Administrative Code 4123-5-18(A) Compensation cannot be paid unless payment is supported by a report of a physician duly licensed to render treatment. Ohio Administrative Code 4121-17-03 defines licensed to include physicians among others, but counselors are not included within the definition.
 Thus, the District Hearing Officer finds that the C-84 disabling the claimant was not completed by one authorized to certify the claimant's disability. As such, the claimant has failed to support his request with probative medical evidence.
 The District Hearing Officer also notes that no office notes or reports regarding claimant's treatment have been submitted in support of the claimant's request. [Emphasis sic.]
10. Relator administratively appealed the DHO's order of July 19, 1999. Following a February 16, 2000 hearing, a staff hearing officer ("SHO") issued an order that affirmed the DHO's order.
11. On March 24, 2000, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 16, 2000.
12. On June 25, 2001, relator, Edward L. Fries, filed this mandamus action.
Conclusions of Law:
Three issues are presented: (1) whether the commission erred in holding that it could not consider Dr. Boyd's disability opinion because, under the principle set forth in State ex rel. Zamora v. Indus. Comm. (1989),45 Ohio St.3d 17, it had implicitly rejected the disability opinion when it exclusively relied upon Dr. Lyall's report in additionally allowing the claim for the three psychological disorders; (2) if Zamora does not prohibit consideration of Dr. Boyd's disability opinion and if the commission were to find the opinion to be credible, could the commission use the opinion to fashion a TTD award even though Dr. Boyd did not estimate the period of TTD; and (3) did the commission err in holding that the Schwartz C-84 cannot constitute evidence of TTD.
The magistrate finds: (1) the commission erred in holding that Zamora prohibited it from considering Dr. Boyd's disability opinion in adjudicating relator's motion for TTD; (2) if the commission were to find Dr. Boyd's disability opinion to be credible, the commission could rely upon the opinion to fashion a TTD award; and (3) the commission did not err in holding that the Schwartz C-84 cannot constitute evidence of TTD.
Accordingly, as more fully explained below, it is the magistrate's decision that this court issue a writ of mandamus.
Turning to the first issue, Zamora prohibits the commission from relying on a medical report that the commission had earlier found unpersuasive.[1] State ex rel. Jeep Corp. v. Indus. Comm. (1992),64 Ohio St.3d 378, 381.
The Jeep court summarized Zamora, stating:
 * * * In Zamora, the claimant simultaneously applied to have an additional psychiatric allowance and to have himself declared permanently totally disabled. The claimant was examined by various specialists, including Dr. Dennis W. Kogut, who stated that the claimant's depression preceded his industrial injury and that the contribution of the industrial injury to the depression was minimal.
 The commission allowed the psychiatric condition and, in so doing, implicitly rejected Kogut's report. However, ten months later, the commission denied the application for permanent total disability based partially on Dr. Kogut's same narrative. The claimant challenged the commission's subsequent reliance on that report, arguing that once rejected, the report was removed from evidentiary consideration. We agreed.
In State ex rel. Verbanek v. Indus. Comm. (1995), 73 Ohio St.3d 562, Edward Verbanek ("Verbanek") applied for a determination of his percentage of permanent partial disability. Based upon a lack of objective findings at the time of his examination, Dr. Boutouras assessed a zero percent permanent partial impairment. The commission, however, made a fifteen percent award of permanent partial disability. Dr. Boutouras' report also presented Verbanek's history of his preinjury back problems.
Thereafter, Verbanek sought payment for medical services rendered and authorization for continued treatment. The commission denied these requests, citing to Dr. Boutouras' detailed history of Verbanek's preinjury low back problems.
In Verbanek, the Supreme Court of Ohio found that Dr. Boutouras' report was not some evidence supporting denial of payment of medical services and, thus, allowed the writ of mandamus.
The Verbanek court observed that, under Zamora, Dr. Boutouras' zero percent impairment had been rejected when the commission made the fifteen percent award of permanent partial disability. Thus, the commission could not subsequently rely upon Dr. Boutouras' zero percent impairment. The Verbanek court states:
 We recognize that the credibility of claimant's recited history does not depend on Boutouras' impairment assessment and is, thus, in a sense, severable from it. However, even if the recited-history element of the report was somehow preservable under an exception to Zamora, it would be insufficient to sustain the commission's decision. We are not convinced that the commission could have reached its decision without reliance upon the zero-percent impaired assessment that eliminated claimant's industrial injury as a potential source of claimant's renewed back problems. [Id. at 563-564.]
In Verbanek, three justices joined in a dissenting opinion which states:
 * * * The majority reads Zamora broadly to stand for the proposition that if any portion of a report is rejected at one level of the commission, the commission cannot rely on any other portion of the report at the same or different level later in the life of the claim. However, the majority's broad interpreta-tion excludes material in a report that is legitimately separate and distinct from the portion of the report that was previously rejected. Therefore, unlike the facts of Zamora, where the commission rejected a report at one level and then relied improperly on the same portion of a report at another level, it would not be inconsistent or unreasonable to allow the commission to reject a portion of the report at one level and rely on another portion of that report at another or the same level. [Id. at 564. Emphasis sic.]
In the magistrate's view, the Verbanek majority avoids, but does not reject, the minority position that Zamora permits reliance upon a severable portion of a report previously rejected.
The concept of report severability presumably underpins the now well-settled view that the commission may reject the conclusion of a rehabilitation report and draw its own conclusion from the same medical information. See State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, 141. Clearly, the Verbanek court does not reject the concept that medical reports can also contain severable parts.
Given the above analysis, the issue before this court, under Zamora, is whether Dr. Boyd's disability opinion was necessarily implicitly rejected when the commission additionally allowed the industrial claim for the three psychological disorders. The magistrate finds that the commission's implicit rejection of Dr. Boyd's opinion that the claim should solely be allowed for a "Major Depressive Disorder, Single Episode, Moderate," does not include a rejection of Dr. Boyd's disability opinion that the major depressive disorder precludes a return to the former position of employment. Moreover, that Dr. Boyd found that the major depressive disorder was moderate, rather than severe, does not detract from the evidentiary value of his disability opinion.
The second issue is whether the commission could use Dr. Boyd's September 15, 1998 disability opinion to fashion a TTD award beginning September 15, 1998, even though Dr. Boyd never certified TTD for a specific period of time.
It has been repeatedly held that an examining doctor cannot opine upon the claimant's disability prior to the examination date. State ex rel. Case v. Indus. Comm. (1986), 28 Ohio St.3d 383; State ex rel. Foreman v. Indus. Comm. (1992), 64 Ohio St.3d 70; State ex rel. Abner v. Mayfield (1992), 62 Ohio St.3d 423; State ex rel. Youghiogheny Coal Co. v. Zelek (1991), 62 Ohio St.3d 305; State ex rel. Basluke v. McGraw Nursing Home (1993), 66 Ohio St.3d 521; State ex rel. Foor v. Rockwell Internatl. (1997), 78 Ohio St.3d 396; and State ex rel. Rawls v. Miami Margarine Co. (1997), 80 Ohio St.3d 357. However, an examining doctor's prospective disability opinion is not considered inherently nonprobative. It has been held, for example, that it was not unreasonable for an examining doctor to offer an estimated return-to-work date that was eleven to twelve months distant from the examination date. State ex rel. Kroger Co. v. Indus. Comm. (1997), 80 Ohio St.3d 483, 488.
In the instant case, Dr. Boyd opined, in effect that, as of the December 15, 1998 examination date, relator was unable to return to his former position of employment due to his depression. Dr. Boyd further opined that relator had not reached maximum medical improvement but Dr. Boyd did not estimate when the injury might reach maximum medical improvement. Implicit in the opinion is that relator's condition will remain temporary for some unspecified period of time.[2]
The magistrate finds that State ex rel. Nelson McCoy Pottery Co. v. Wilson (1990), 56 Ohio St.3d 28, is instructive as to the potential evidentiary value of Dr. Boyd's report.
In Nelson McCoy, the commission awarded TTD from July 1, 1985 through September 17, 1986, when the disability from pulmonary silicosis was found to have become permanent. The commission's award was based upon the reports of Dr. Wehr and the September 17, 1986 report of Dr. Knight who found that the occupational disease had become permanent. Dr. Wehr found, as late as 1985, that claimant had difficulty breathing and experienced coughing spells accompanied by marked chest pain. However, neither Dr. Wehr nor Dr. Knight ever specifically opined that the claimant was unable to return to his former position of employment as a slip maker where he was exposed to silica dust.
In Nelson McCoy, the court held that the commission's determination constitutes a legal conclusion within its sole discretion and that it was not necessary that the examining physician reach the same conclusion.
In Nelson McCoy, Dr. Wehr apparently did not opine as to the time period of disability since he did not render an opinion that the claimant was disabled from his former position of employment.
In the instant case, Dr. Boyd did opine that relator was unable to return to his former position of employment as of September 15, 1998, but did not specify for how long that disability could be expected to last. Under such circumstances, as in Nelson McCoy, the commission is not precluded from fashioning a TTD award based upon medical evidence that it finds credible.
The third issue is whether a licensed professional clinical counselor ("LPCC"), such as Ms. Schwartz, is authorized by law to certify TTD so that the certification can constitute some evidence upon which the commission can rely.
R.C. 4123.56(A) sets forth the statutory requirements for the payment of TTD compensation. R.C. 4123.56(A) states in part:
 * * * In the case of a self-insuring employer, payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer * * *. Payments shall continue pending the determination of the matter, however payment shall not be made for the period * * * when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment[.] * * *
In setting forth the requirements for TTD compensation, R.C. 4123.56(A), as above quoted, refers three times to the "attending physician" or "treating physician."
The Ohio Administrative Code consistently refers to the physician when setting forth requirements for TTD compensation and for other types of compensation.
Ohio Adm. Code 4123-5-18(A), a provision cited by the commission in its order, states:
 * * * [N]o payment of compensation shall be approved by the bureau in a claim unless supported by a report of a physician duly licensed to render the treatment.
Ohio Adm. Code 4123-3-15(B)(4) provides that applications to reactivate claims "shall be completed by the attending physician in those cases where additional compensation or additional medical services are sought."
Ohio Adm. Code 4121-3-34(C)(1) provides:
 Each application for permanent total disability shall be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent and total disability compensation. * * *
Ohio Adm. Code 4125-1-01(C)(2) requires that an application for wage loss compensation shall be accompanied by a medical report authored and signed by a physician.
The above authorities make it abundently clear that only a physician can provide medical evidence of TTD.
Which medical care providers are included under the definition of physician? As the commission points out in this action, some of the definitions pertinent to the Health Partnership Program ("HPP") are instructive. Ohio Adm. Code 4123-6-01(D) defines physician as a doctor of medicine, doctor of osteopathic medicine or surgery, doctor of podiatric medicine, doctor of chiropractic, doctor of mechanotherapy, a psychologist, and a dentist.
Ohio Adm. Code 4123-6-01(F) defines a "practitioner" as:
 A physician, or a physical therapist, occupational therapist, optometrist, or any other person currently licensed and duly authorized to practice within their respective health care field.
R.C. 4757.21 states:
 A person licensed under this chapter to practice as a professional clinical counselor or a professional counselor may diagnose and treat mental and emotional disorders, except that a professional counselor may do so only under the supervision of a psychologist, psychiatrist, professional clinical counselor, or independent social worker. A professional clinical counselor or professional counselor may engage in the private practice of professional counseling as an individual practitioner or as a member of a partnership or group practice.
Clearly, under the HPP, a licensed professional clinical counselor is not a physician as defined at Ohio Adm. Code 4123-6-01(D). A licensed professional clinical counselor could be viewed as a "practitioner" under Ohio Adm. Code 4123-6-01(F). While a physician is a practitioner under the HPP, those terms are obviously not equivalent. In other words, even if Ms. Schwartz, as a licensed professional clinical counselor, can claim "practitioner" status under the HPP definition, she is clearly not a "physician."
In short, under the law, a licensed professional clinical counselor is not competent to certify TTD for purposes of workers' compensation.
Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying TTD compensation as of September 15, 1998, and to enter a new order, in a manner consistent with this magistrate's decision, that adjudicates relator's motion for TTD compensation.
/S/ Kenneth W. Macke
 KENNETH W. MACKE MAGISTRATE
[1] Zamora has been repeatedly followed by the Supreme Court of Ohio. State ex rel. Jeep Corp. v. Indus. Comm. (1992), 64 Ohio St.3d 378; State ex rel. Hoover Co. v. Indus. Comm. (1995), 72 Ohio St.3d 387; State ex rel. Verbanek v. Indus. Comm. (1995), 73 Ohio St.3d 562. The Supreme Court of Ohio has also had occasions to distinguish Zamora. State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm. (1993),66 Ohio St.3d 267; State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693.
[2] As previously noted, Dr. Lyall opined on April 27, 1998, that relator will make "a significant and maximum part of his improvement" within a period of six months to one year if he receives appropriate mental healthcare.