DECISION IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION.
{¶ 1} Delmer Rose filed this action in mandamus, seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order denying him *Page 2 
permanent total disability ("PTD") compensation and which compels the commission to enter a new order granting him PTD compensation.
 {¶ 2} In accord with the local rules, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated to pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we refuse to issue the requested writ.
 {¶ 3} Counsel for Delmer Rose has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. Counsel for General Motors Corporation, Delmer Rose's former employer, has also filed a memorandum in response. The case is now before the court for review.
 {¶ 4} Delmer Rose was injured in 1983. His claim has been allowed for lower back strain and adjustment disorder with mixed emotional features secondary to chronic pain. He has not worked in over 20 years.
 {¶ 5} Delmer Rose initially filed for PTD compensation in April 2004. The application was denied.
 {¶ 6} Delmer Rose filed a second application for PTD compensation in June 2005. This application was dismissed because it referenced major depression as a recognized condition.
 {¶ 7} Delmer Rose filed a third application for PTD compensation in October 2005. This third application is the application for which Mr. Rose now seeks review and a writ of mandamus. *Page 3 
 {¶ 8} As indicated above, Delmer Rose has had his claim recognized for adjustment disorder with mixed emotional features secondary to chronic pain. According to Diagnostic and Statistical Manual for Mental Disorders (4 Ed. Text Rev. DSM-IV-TR), the diagnostic criteria for Adjustment Disorders are:
 A. The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s).
 B. These symptoms or behaviors are clinically significant as evidenced by either of the following:
 (1) marked distress that is in excess of what would be expected from exposure to the stressor
 (2) significant impairment in social or occupational (academic) functioning
 C. The stress-related disturbance does not meet the criteria for another specific Axis I disorder and is not merely an exacerbation of a preexisting Axis I or Axis II disorder.
 D. The symptoms do not represent Bereavement.
 E. Once the stressor (or its consequences) has terminated, the symptoms do not persist for more than an additional 6 months.
 {¶ 9} The diagnosing psychologist or psychiatrist is then supposed to specify if the adjustment disorder is acute or chronic. The professional is also supposed to code the adjustment disorder by one of the following subtypes:

309.0 With Depressed Mood
309.24 With Anxiety
309.28 With Mixed Anxiety and Depressed Mood
309.3 With Disturbance of Conduct
309.4 With Mixed Disturbance of Emotions and Conduct
309.9 Unspecified.
 *Page 4 
 {¶ 10} Delmer Rose's mental condition was originally diagnosed from DSM-IV-R with a description which most closely parallels 309.28 ("With Mixed Anxiety and Depressed Mood"). 309.28 is to be used when the predominant manifestation is a combination of depression and anxiety, which accurately describes Mr. Rose's situation. He is both depressed and anxious about his inability to work due at least in part to his back injury.
 {¶ 11} Based upon the staff hearing officer's ("SHO") understanding of adjustment disorder with anxiety and depressed mood, the SHO discounted reports from a psychiatrist who reported that Delmer Rose's depression had become major and was a significant disability factor in and of itself. The psychiatrist was Mr. Rose's treating psychiatrist, Alan B. Levy, M.D.
 {¶ 12} The SHO likewise discounted the report of John M. Malinky, Ph.D., who also concluded that Delmer Rose was not capable of working. Dr. Malinky is a commission specialist. The SHO discounted the report because it mentioned depression.
 {¶ 13} In contrast, Richard H. Clary, M.D., a psychiatrist retained by counsel for General Motors Corporation found Delmer Rose to suffer from only ten percent permanent partial impairment and found the allowed psychiatric condition not to cause any limitation or restrictions on Mr. Rose's ability to work. Dr. Clary reported that Mr. Rose has crying spells three to four times per week because of pain and that Mr. Rose was tearful briefly during his interview with Dr. Clary. Dr. Clary also reported that Mr. Rose suffers from BPH and Crohn's disease in addition to his recognized medical condition of lower back strain. *Page 5 
 {¶ 14} As to medical conditions, the commission had the benefit of a report from commission specialist Boyd Bowden, D.O., who is an orthopedist. Dr. Bowden found Delmer Rose to be incapable of work. Dr. Bowden mentioned in his report that medical testing in 1997 revealed L5 nerve root irritation and an MRI showed subcortical edema and degenerative changes. Dr. Bowden found a ten percent whole person impairment with reference to lumbar strain. At no place in his report did Dr. Bowden tie the inability to work to anything but allowed conditions.
 {¶ 15} The SHO relied upon the report of Lewis Seeder, M.D., who also was retained by counsel for General Motors Corporation. Dr. Seeder reported Delmer Rose to be capable of sedentary work. Dr. Seeder also reported Mr. Rose to have an eight percent impairment of the whole person due to his lumbar strain.
 {¶ 16} From an objective standpoint, the reports from physicians retained by an employer or a claimant can be considered open to questions. In theory, however, specialists retained by the commission are neutral. They are not indebted to either the claimant or the employer and their income is not dependent upon a claimant or an employer hiring them to do independent medical examinations in the future.
 {¶ 17} The evidence before us shows that the reasons expressed by the SHO for discounting the report of the commission specialists as to Delmer Rose were simply not valid. Adjustment disorder consistently involves the presence of depression. The fact that a psychologist mentions depression in a report is not a basis for discounting the evidentiary value of the report. *Page 6 
 {¶ 18} An orthopedist, like Dr. Bowden, who conducts a detailed examination can be expected to note the existence of medical conditions which are not part of the claim. Both Drs. Seeder and Clary mentioned the existence of such condition, but the mere mention of them did not damage their credibility for the SHO. Yet commission specialist Dr. Bowden was considered less credible because he mentioned the existence of such conditions while expressly finding "[b]ased solely on impairment due to the allowed condition(s) in the claim within my specialty and with no consideration of the injured worker's age, education, or work training. * * * This injured worker is incapable of work."
 {¶ 19} Because the SHO utilized invalid reasons in deciding the opinion of the commission specialists, Mr. Rose is entitled to a limited writ of mandamus. We sustain the objection to the magistrate's decision. We adopt the findings of fact in the magistrate's decision and supplement the findings of fact with the facts set forth above. We do not adopt the conclusions of law set forth in the magistrate's decision.
 {¶ 20} As a result, we issue a limited writ of mandamus compelling the commission to vacate its order denying PTD compensation for Delmer Rose.
 {¶ 21} The application is remanded to the commission for further review of whether or not Delmer Rose is entitled to PTD compensation based upon all of the evidence in the file, including the reports of the commission specialist.
Objections sustained, limited writ granted.
 BROWN and McGRATH, JJ., concur. *Page 7 
 (APPENDIX A) MAGISTRATE'S DECISION IN MANDAMUS {¶ 22} Relator, Delmer Rose, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 8 
disability ("PTD") compensation and ordering the commission to find that relator is entitled to that compensation.
Findings of Fact: {¶ 23} 1. Relator sustained a work-related injury on June 29, 1983, and his claim has been allowed for the following conditions: "Strain lower back; adjustment disorder with mixed emotional features secondary to chronic pain."
 {¶ 24} 2. Relator last worked in 1985.
 {¶ 25} 3. Relator's first application for PTD compensation was filed in April 2004, his second application was filed in June 2005; and his third application, which is the subject of this mandamus action, was filed on October 12, 2005.
 {¶ 26} 4. Relator submitted two reports from his treating physician Alan B. Levy, M.D., who has seen relator for his allowed psychological condition. Dr. Levy's June 21, 2005 report had also been submitted in support of relator's second application for PTD compensation. In that report, Dr. Levy stated as follows:
 Delmer Rose has been under my care since September 18, 1985 at which time he had been referred by the Industrial Commission of Ohio Rehabilitation Division where he was undergoing treatment at the Camera Rehabilitation Center. He was referred to me for a psychiatric evaluation for medication treatment of depression. I found Mr. Rose to be suffering from Major Depression, and I believed at that time that this depression was directly due to his job-related injury.
 Mr. Rose has remained under my care since that time, and I have seen him every several months for treatment of this depression. I continue to believe the depression is directly due to his job-related injury. I was under the impression that this depression had been allowed as part of his claim. If it has not, it certainly should be, and I would expect an independent psychiatric evaluator to conclude this as well. As I have *Page 9 
discussed with you before, I believe Mr. Rose's depression has reached MMI, and I believe he is totally and permanently disabled by the depression as well as by his back pain.
 {¶ 27} 5. The commission had dismissed relator's second PTD application on the basis that the medical evidence submitted referenced a nonallowed condition: major depression. In an effort to clarify that report, Dr. Levy authored a second report, dated September 16, 2005, wherein he stated as follows:
 I am in receipt of your letter dated September 14 indicating that Mr. Rose's claim is formerly allowed for the condition of Adjustment Disorder with mixed emotional features secondary to chronic pain. I am treating him for the same disorder; however, after an individual has gone through six months of depression and anxiety, which might be initially characterized as Adjustment Disorder, the diagnosis is restated. Thus, I believe my diagnosis is for the same condition that was initially diagnosed as Adjustment Disorder. I do no[t] believe it is a new or separate condition that should be additionally allowed but rather a clarification of how his allowed condition should now be conceptualized.
 {¶ 28} Relator was seen by Boyd W. Bowden, D.O., a commission specialist. Dr. Bowden examined relator for his allowed physical conditions. In his report dated January 10, 2006, Dr. Bowden noted his objective findings, concluded that relator had reached maximum medical improvement ("MMI"), and assessed the following impairment:
 Based on the Guides to the Evaluation of Permanent Impairment, 5th Edition, published by the American Medical Association, a DRE Category III impairment gives him a 10% whole person impairment with reference to his lumbar sprain. It is to be noted that throughout the examination he had guarding and has a test that shows L5 nerve root irritation on EMG, thus giving him a 10% whole person impairment. *Page 10 
 {¶ 29} Ultimately, Dr. Bowden concluded that relator was not capable of sustained remunerative employment.
 {¶ 30} 7. Relator was also examined by John M. Malinky, Ph.D., for his allowed psychological condition. In his report dated January 3, 2006, Dr. Malinky correctly set out relator's allowed psychological condition: "Adjustment Disorder With Mixed Emotional Features." Throughout his report, Dr. Malinky frequently referred to the fact that relator indicated he was depressed and that he presented with a depressed mood. Ultimately, Dr. Malinky concluded that relator's allowed psychological condition had reached MMI, assessed a 30 percent whole person impairment, and concluded that relator was not capable of working as follows:
 This injured worker is incapable of work. Mr. Rose would not be able to deal with the public or respond appropriately to supervisors and peers due to his depression. He has withdrawn. He sees one friend and there are times that his friend will come over to see him and the friend leaves because Mr. Rose refuses to leave his house. Mr. Rose would not be able to concentrate for extended periods of time. He has difficulties sustaining and persisting at tasks, due to his depression.
 {¶ 31} 8. Relator was also examined by Richard H. Clary, M.D. In his report dated December 8, 2005, Dr. Clary concluded that relator's psychological condition did not preclude him from performing any work. Dr. Clary concluded as follows:
 Mr. Rose has been treating with Dr. Levy, a psychiatrist, since 1985. In my medical opinion, Mr. Rose is receiving appropriate treatment from his psychiatrist. Mr. Rose is currently taking Prozac and Cymbalta. In my medical opinion, it would be appropriate for Mr. Rose to take Cymbalta but he should be tapered off of the Prozac. In my medical opinion, additional treatment by a psychologist is not appropriate and is not indicated. *Page 11 
 In my medical opinion, the allowed psychiatric condition is not work prohibitive and does not cause temporary total disability and does not cause permanent disability. I have completed the Work Capabilities form and I have included that with my report. In my medical opinion, the allowed psychiatric condition causes a 10 percent permanent partial impairment of the whole person based on the AMA Guides Fifth Edition. In my medical opinion, the allowed psychiatric condition does not cause any limitations or restrictions in his ability to work.
 {¶ 32} 9. Relator was also examined by Lewis Seeder, M.D., for his allowed physical conditions. In his December 3, 2005 report, Dr. Seeder provided his objective findings, assessed an eight percent whole person impairment, and concluded that relator could perform at a sedentary level provided that his work involved sitting most of the time with occasional standing or walking and with occasional lifting of less than ten pounds.
 {¶ 33} 10. A vocational assessment was prepared by Anthony Stead, MS, CRC, CCM, dated March 14, 2006. Mr. Stead opined that relator's age of 67 years should not necessarily be considered a barrier to reemployment as, at that age, relator should retain the ability to learn new skills and adapt to new environments, if motivated. Mr. Stead noted that relator had not graduated from high school and had not obtained his GED. Mr. Stead concluded that although relator's educational level was limited, it should be sufficient for entry-level, unskilled or semi-skilled jobs and would not be a barrier to reemployment. With regard to his past work experience, Mr. Stead concluded that relator had minimal transferable skills but this should not be considered a barrier to reemployment. Thereafter, Mr. Stead concluded that relator could perform the following jobs: "General Clerk Positions, Information Clerk, Rental clerk (various positions), Cashier, Cashier Courtesy Booth, Surveillance System Monitor, Data Entry, Mail Censor, *Page 12 
Customer Service Representative (various positions), Dispatcher — Radio, and Telephone Work."
 {¶ 34} 11. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on March 28, 2006, and resulted in an order denying the compensation. The SHO relied upon the reports of Drs. Seeder and Clary. As indicated in the findings of fact, Dr. Seeder concluded that relator had an eight percent whole person impairment and that he could perform work at a sedentary level. Dr. Clary had opined that relator's allowed psychiatric condition had resulted in a ten percent permanent partial impairment and was not work-prohibitive. Thereafter, the SHO considered the nonmedical disability factors. With regard to relator's age of 67 years, the SHO noted that relator's age could be considered a negative vocational factor; however, the SHO concluded that relator's age could not be adequately evaluated because relator had made no attempts at vocational rehabilitation or retraining for more than ten years. With regard to relator's education, the SHO concluded that his education was limited, but relator's employment history had demonstrated that ability to perform skilled work. As such, the SHO concluded that relator's educational level was a vocationally neutral factor. With regard to relator's prior work history, the SHO agreed with the report of Mr. Stead that relator had developed skills which would be transferable to other employment.
 {¶ 35} 12. Although the commission is not required to explain why it rejects certain medical reports, in this instance, the SHO did. The SHO rejected the report of Dr. Bowden for the following reason:
 * * * Dr. Bowden's 1/03/2006 [sic] report was not found to be probative medical evidence as Dr. Bowden also considered *Page 13 
non-allowed conditions: L5 nerve root irritation, subcortical edema at the endplate of L3, and degenerative changes throughout the lumbar spine. Dr. Bowden's diagnoses were confirmed by the lumbar MRI studies dated 8/13/2001 and 7/06/2005.
 {¶ 36} The SHO rejected the psychological report of Dr. Malinky for the following reason:
 The injured worker was also examined by Dr. Malinky regarding the allowed psychiatric condition. In a report dated 1/03/2006 Dr. Malinky indicates the injured worker is incapable of work due to "his depression." Dr. Malinky indicates that injured worker is unable to deal with the public, respond appropriately to supervisors and peers, or sustain or persist at tasks due to his depression.
 Depression is not an allowed condition in this claim. Therefore, the 1/03/2006 report of Dr. Malinky is not found to be persuasive or probative.
(Emphasis sic.)
 {¶ 37} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry *Page 14 Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 39} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 40} In this mandamus action, relator contends that the commission abused its discretion by rejecting the reports of Drs. Malinky, Levy, and Bowden. Specifically, relator contends that the commission abused its discretion by not permitting some flexibility with regards to the manner in which Drs. Malinky and Levy stated his allowed psychological condition. Relator cites State ex rel. Kroger v. Indus. Comm. (1997),80 Ohio St.3d 483, in support.
 {¶ 41} In Kroger, the employer had challenged the psychological report of Dr. Blythe arguing that she had relied, in part, on nonallowed conditions. The claimant's claim had been allowed for anxiety disorder with panic attacks. In her November 6, 1991 *Page 15 
C-84, Dr. Blythe listed the claimant's conditions as post-traumatic stress disorder, panic attacks, and dysthymia. The court noted that, ideally, the diagnoses contained on a disability form should mirror exactly the conditions allowed in the claim; however, the court determined that some degree of flexibility seems particularly important when dealing with psychiatric conditions. The court noted that Dr. Blythe had consistently referred to the same symptoms as being the cause of the claimant's disability and that many of the symptoms from which the claimant was suffering are common to all three diagnoses. As such, the court concluded that the commission had not abused its discretion in relying upon the report of Dr. Blythe.
 {¶ 42} In the present case, relator contends that the commission abused its discretion by rejecting the report of Dr. Malinky because of his references to relator's depression. For the reasons that follow, this magistrate disagrees.
 {¶ 43} First, although the commission is not required to explain why it finds certain medical evidence not to be persuasive, when the commission does give an explanation, the commission's reasoning is reviewable in a mandamus action. In the present case, as noted in the findings of fact, Dr. Malinky referred to relator's depressed mood multiple times in his report. Ultimately, when opining that relator was incapable of working, Dr. Malinky gave the following explanation:
 This injured worker is incapable of work. Mr. Rose would not be able to deal with the public or respond appropriately to supervisors and peers due to his depression. He has withdrawn. He sees one friend and there are times that his friend will come over to see him and the friend leaves because Mr. Rose refuses to leave his house. Mr. Rose would not be able to concentrate for extended periods of time. *Page 16 
He has difficulties sustaining and persisting at tasks, due to his depression.
 {¶ 44} As stated previously, relator's allowed psychological condition is allowed for adjustment disorder with mixed emotional features secondary to chronic pain. Although relator appears to argue that his allowed psychological condition and the condition of depression are so similar that Drs. Malinky and Levy were actually opining that it was the allowed psychological condition which prevented relator from being able to work, relator has not established that statement to be true. When relator's second PTD application was dismissed because the report of Dr. Levy referenced "major depression," a nonallowed condition, both relator and his doctor were clearly on notice that the commission did not consider major depression to be his allowed psychological condition. The burden of proof was upon relator to establish that his allowed psychological condition actually prevented him from working. Upon review of the report of Dr. Malinky, this magistrate cannot say that the commission abused its discretion by finding his report not to be persuasive because Dr. Malinky indicated that relator was unable to deal with the public, respond appropriately to supervisors and peers, or sustain or persist at tasks due to his depression. The commission is the exclusive evaluator of the weight and credibility to be given the evidence presented. Teece. While the commission is permitted to conclude that relator's condition was basically the same condition that was allowed in spite of the fact that a doctor used a different term to describe that condition, the commission is not required to reach that result in every case. See State ex rel. Jeffrey Mining Machinery Div.,Dresser Industries, Inc. v. Indus. Comm. (1990), 56 Ohio St.3d 91. *Page 17 
It is the commission that makes that determination and this magistrate finds that relator has not demonstrated that the commission abused its discretion in this case.
 {¶ 45} Relator also argues that the commission is required to find that Dr. Malinky's reference to "depression" is synonymous with the allowed condition of "adjustment disorder with mixed emotional features secondary to chronic pain," and cites Kroger.
 {¶ 46} Pursuant to Kroger, the commission may find that the references to different conditions are acceptable because of common symptomology; however, the court does not require that the commission make such a finding.
 {¶ 47} Likewise, relator's contention that Dr. Bowden's reference to "L5 nerve root irritation, subcortical edema at the endplate of L3, and degenerative changes throughout the lumbar spine," are synonymous with strain lower back is not necessarily substantiated by the evidence before the commission. Relator has not met his burden of proving that Dr. Bowden's opinion that relator was incapable of performing some sustained remunerative employment was due to the strain lower back and not the other conditions which Dr. Bowden noted in his report.
 {¶ 48} This magistrate finds that the commission's explanation for why it did not find the reports of Drs. Levy, Malinky, and Bowden to be persuasive does not constitute an abuse of discretion and this argument of relator is not well-taken.
 {¶ 49} In the alternative, relator contends that the commission should have requested that Drs. Malinky and Bowden prepare addendums to their reports explaining whether or not their opinions were based solely upon the allowed conditions in the claim. *Page 18 
While the commission could have requested that Drs. Malinky and Bowden prepare addendums, the commission certainly was not required to do so. Relator contends that because Drs. Malinky and Bowden are commission specialists, the commission must insure that their reports could constitute "some evidence." Because these reports were flawed, relator contends that the commission had the burden and responsibility to get addendums or new reports. However, while the commission had the discretion to seek addendums from these doctors, there is no requirement to do so. As such, this argument of relator is likewise not well-taken.
 {¶ 50} Lastly, relator contends that Mr. Stead's vocational report does not constitute some evidence upon which the commission could rely. Relator does not challenge the potential jobs which Mr. Stead specifically listed in his report. Those jobs were noted in the findings of fact as follows: "General Clerk Positions, Information Clerk, Rental clerk (various positions), Cashier, Cashier Courtesy Booth, Surveillance System Monitor, Data Entry, Mail Censor, Customer Service Representative (various positions), Dispatcher — Radio, and Telephone Work." What relator does challenge are the attachments which Mr. Stead attached to his report of various jobs currently available in the market place. Relator contends that some of those jobs are outside of his physical capabilities, while one requires that the applicant possess a high school diploma or a GED and another would require relator to operate a forklift.
 {¶ 51} Upon review, Mr. Stead's attachment of those job advertisements does not constitute a reason for the commission not to rely upon other portions of his report. Furthermore, in the commission's order, the commission did not list any of the jobs from *Page 19 
the advertisements, which Mr. Stead had attached. Instead, the commission only noted the jobs above indicated, which relator does not contend are outside of his restrictions or abilities.
 {¶ 52} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1