DECISION
{¶ 1} Relator, PCC Airfoils, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that granted permanent total disability compensation to respondent-claimant, Donna J. Cable, and to enter an order denying such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In its objections, relator argues that the commission abused its discretion in relying on the report of Dr. Balogh because the report included non-allowed conditions. The magistrate correctly found that the presence of a non-allowed condition in a claim does not destroy the compensability of the claim but, nonetheless, the claimant must show that the allowed condition independently caused the disability. The September 28, 2001 report of Dr. Balogh states that the claimant is permanently and totally disabled based on the allowed psychiatric condition of her claim. Thus, Dr. Balogh's report is some evidence to support the commission's award of permanent total disability compensation.
 {¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
KLATT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution
 IN MANDAMUS {¶ 5} In this original action, relator, PCC Airfoils, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Donna J. Cable ("claimant"), and to enter an order denying said compensation.
Findings of Fact:
 {¶ 6} 1. Claimant developed bilateral carpal tunnel syndrome while employed with relator, a self-insured employer under Ohio's workers' compensation laws. The diagnosis was made on March 3, 1992. The industrial claim has been additionally allowed for: "major depressive disorder, single episode," and "moderate and adjustment disorder with depressed mood."
{¶ 7 2. Claimant's primary care physician is Paul D. Mumma, D.O.
 {¶ 8} 3. Dr. Mumma hospitalized claimant in June 1997 in a psychiatric unit where she came under the care of psychiatrist Roger Balogh, M.D. Claimant continued under the care of Dr. Balogh after her first psychiatric hospitalization.
 {¶ 9} 4. On June 16, 2000, Dr. Balogh wrote:
 {¶ 10} "Donna Cable is a patient under my psychiatric care. I have been seeing her for treatment for major depressive disorder, single episode and adjustment disorder with depressed mood since a psychiatric hospitalization in June of 1997.
 {¶ 11} "Donna has had significant ongoing depressive symptoms since the time that I started working with her. There have been brief improvements in her mood, the most recent occurring in September of last year but [she] since then has been extremely depressed. * * *
 {¶ 12} "I can say with reasonable medical certainty that Donna Cable will require psychotropic medication of this variety for the rest of her life. As with any chronic remitting medical illness, it may be necessary to alter dosages and, at times, the particular drug. When this occurs, it will be necessary for the Bureau to respond rapidly in covering and approving these meds so that Donna will not experience undue suffering while waiting for approval coverage. Delays can result in costly rehospitalizations as well as increased patient morbidity and mortality. When her depression is severe, I do consider her a potential suicide risk."
 {¶ 13} 5. On September 18, 2001, claimant filed an application for PTD compensation. In support, claimant submitted a report, dated August 30, 2001, from Dr. Mumma, stating:
 {¶ 14} "Ms. Cable has a history of bilateral carpal tunnel syndrome, major depression, adjustment disorder with depressed mood, and chronic pain. Her current physical findings include pain, tenderness, and decreased motion of her right upper extremity, her hand, her wrist, and to some extent her right shoulder, her right trapezius area, her right cervical spine, and pain and tenderness extending up into oxiput and temple region of the scalp and skull. These findings are mostly due to sympathetically mediated pain as a consequence of her right-sided chronic median neuropathy. She continues to be in chronic pain suffered from interrupted sleep, depressed mood, and feelings of loss surrounding her earning capacity and loss of her health.
 {¶ 15} "Ms. Cable suffers from pain on a daily basis, which is refractory to most interventions. She did receive partial improvement with sympathetic nerve blockade and I believe that this modaility should be sought again in the near future for partial relief of her chronic right sided median neuropathy and associated sympathetically mediated pain. Her depression remains considerable and is under the care of Dr. Balog [sic].
 {¶ 16} "At the present time Ms. Cable appears to be totally disabled for all occupations due to the riggers of coping with her severe median neuropathy and depression."
 {¶ 17} 6. On September 28, 2001, Dr. Balogh wrote:
 {¶ 18} "Donna Cable has remained a patient under my medical care. Her diagnosis continues to be that of recurrent major depression with severe chronic pain syndrome. Donna has consistently been experiencing increasing levels of depression. She has difficulties with sustained sleep. She has anxiety, restlessness, nervousness, dysphoric mood, worthless, hopeless, helpless feelings, and becomes easily tearful.
 {¶ 19} "Donna's symptoms will wax and wane, but her mood had [sic] deteriorated and this deterioration is pretty well documented dating back to clinic notes of February 28, 2000. My notes since then have documented ongoing significant depressive symptoms. She frequently wishes that she would die. There are times that she has thoughts of taking an overdose and taking her life. She has contracted not to do this. She sees no change in the way she is going to feel and function. Other reasons she will not end her life are family members and grandchildren.
 {¶ 20} "Donna had a psychiatric hospitalization in the month of August, this was under Dr. Mumma's care with my working as a consultant. She also had approximately three weeks of partial hospital program following that hospitalization to work with her mood. Although she appeared to improve in sleep, mood, energy level, affect, anxiety, withdrawal, and suicidal thoughts, when she met with Mr. Jones for follow-up on September 26, she again was the same as she had been prior to the hospitalization, and she reported that she had lied about how she was doing, covered the way she was feeling in order to get discharged from the program. She does not like social situations and does not want to be near a hospital.
 {¶ 21} "I have begun meeting and working with medications with her again, however, given the chronicity of her depression, its severity and resistance to treatment, I consider Donna to be permanently and totally disabled from doing any kind of sustained renumerative [sic] employment based on the psychiatric condition allowed within the claim. * * *"
 {¶ 22} 7. On November 5, 2001, claimant was examined, at the employer's request, by psychiatrist Richard H. Clary, M.D. Dr. Clary wrote:
 {¶ 23} "In my medical opinion, Ms. Cable is not permanently and totally disabled as the result of her allowed psychiatric conditions in the claim. There are many hobbies, interests, and activities that she enjoys and wants to participate in and her only limitations are her physical problems. She has many stressors and physical problems unrelated to her claim. Review of medical records indicate that she has had a tendency to exaggerate her psychological problems. In my medical opinion, the previous use of narcotic pain medication for several years was causing false positive symptoms of depression. In my medical opinion, she has no work limitations as the result of her allowed psychiatric conditions and her only limitations result from her physical conditions allowed in the claim."
 {¶ 24} 8. On January 2, 2002, claimant was examined by commission specialist and orthopedist James Rutherford, M.D. Dr. Rutherford examined only for right carpal tunnel syndrome. Dr. Rutherford estimated that claimant has a 24 percent permanent partial impairment of the whole person arising from the right carpal tunnel syndrome. He stated that claimant "has limited use of her right upper extremity," and she is "limited to sedentary work activity."
 {¶ 25} 9. On January 3, 2002, claimant was examined by psychologist Earl F. Greer, Ed.D. Mr. Greer reported:
 {¶ 26} "* * * The degree of emotional impairment from her industrial accident on 3-3-1992 would currently not be expected to solely prevent her from returning to her former position of employment. Work would be expected to be therapeutic, enhancing self-worth; and with motivation is expected to be a significant factor."
 {¶ 27} 10. Following an April 23, 2002 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation. The SHO's order states:
 {¶ 28} "The permanent total disability start date is the date of the report from the claimant's attending psychiatrist, Dr. Roger Balogh, who stated;
 {¶ 29} "`I have begun meeting and working with medications with her again, however, given the chronicity of her depression, its severity and resistance to treatment, I consider Donna to be permanently and totally disabled from doing any kind of sustained remunerative employment based on the psychiatric condition allowed within the claim.'
 {¶ 30} "The 08/30/2001 report of Dr. Mumma was not used as a starting date since an issue was raised at hearing that Dr. Mumma's report could be construed as considering non-allowed conditions.
 {¶ 31} "The Staff Hearing Officer finds the claimant to be permanently totally impaired and unable to perform sustained remunerative employment based solely on her psychiatric impairment and the report of Dr. Balogh. Since permanent total impairment is found based solely on an allowed medical condition in the claim, there is no discussion of disability factors such as age, education, and work history pursuant to Ohio Administrative Code Rule 4121-3-34(D)(2).
 {¶ 32} "All evidence was reviewed and considered."
 {¶ 33} 11. Relator moved for reconsideration. On July 26, 2002, the commission mailed an order denying reconsideration.
 {¶ 34} 12. On October 18, 2002, relator, PCC Airfoils, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 35} The sole issue is whether the September 28, 2001 report of Dr. Balogh is some evidence supporting the commission's finding that the allowed psychiatric conditions of the claim alone preclude all sustained remunerative employment.
 {¶ 36} Finding that Dr. Balogh's report is some evidence supporting PTD, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 37} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. Ohio Adm. Code4121-3-34(D)(2)(a) states:
 {¶ 38} "If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the claimant's return to his former position of employment as well as prohibits the claimant from performing any sustained remunerative employment, the claimant shall be found to be permanently and totally disabled, without reference to the vocational factors * * *."
 {¶ 39} In State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 762, this court set forth "several scenarios" to guide the commission in its adjudication of PTD applications. This court stated:
 {¶ 40} "* * * If there is some evidence upon which the commission specifically relies that a claimant is medically unable not only to return to his former position of employment but to perform any sustained remunerative employment, all as a result of the allowed condition, it is unnecessary that the commission look at any further factors, such as Stephenson [State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167] factors, and an order allowing permanent total disability compensation should be entered. State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood (1991), 60 Ohio St.3d 38[.] * * *"
 {¶ 41} Here, the commission relied exclusively upon Dr. Balogh's September 28, 2001 report to support its determination that the psychiatric conditions of the claim alone preclude all sustained remunerative employment. Relator contends that Dr. Balogh's report cannot constitute some evidence upon which the commission can rely because, allegedly, Dr. Balogh factors non-allowed conditions into his opinion that claimant is precluded from all sustained remunerative employment. According to relator, when Dr. Balogh states "her diagnosis continues to be that of recurrent major depression with severe chronic pain syndrome" he is, in effect, referring to two non-allowed conditions: (1) recurrent major depression, and (2) chronic pain syndrome.
 {¶ 42} The magistrate agrees with relator that "chronic pain syndrome" is a reference to a non-allowed condition. However, the magistrate disagrees that "recurrent major depression" is necessarily a reference to a non-allowed condition.
 {¶ 43} A claimant must always show the existence of a direct and proximate causal relationship between his or her industrial injury and the claimed disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. Non-allowed medical conditions cannot be used to advance or defeat a claim for compensation. Id.
 {¶ 44} The mere presence of a non-allowed condition in a claim for compensation does not in itself destroy the compensibility of the claim, but the claimant must meet his or her burden of showing that an allowed condition independently caused the disability. State ex rel. Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 45} Taber's Cyclopedic Medical Dictionary (18 Ed. 1997) 1885, defines "syn-drome" as:
 {¶ 46} "* * * A group of symptoms and signs of disordered function related to one another by means of some anatomical, physiological, or biochemical peculiarity. This definition does not include a precise cause of an illness but does provide a framework of reference for investigating it. * * *"
 {¶ 47} In his September 28, 2001 report, Dr. Balogh concludes that claimant is "permanently and totally disabled from doing any kind of sustained renumerative [sic] employment based on the psychiatric condition allowed within the claim." In the magistrate's view, this opinion can be interpreted to mean that Dr. Balogh did not factor "chronic pain syndrome" into his opinion that claimant is permanently and totally disabled because chronic pain syndrome is apparently not a psychiatric condition. See Taber's, supra.
 {¶ 48} However, the question remains as to whether Dr. Balogh's reference to "recurrent major depression" is a reference to a non-allowed condition. In the magistrate's view, Dr. Balogh's reference to "recurrent major depression" need not be viewed as a reference to a non-allowed condition. This is so for two reasons: (1) in the September 28, 2001 report itself, Dr. Balogh states that his opinion is "based on the psychiatric condition allowed within the claim," and (2) in his June 16, 2000 report, Dr. Balogh specifically acknowledges the allowed psychiatric conditions of the claim.
 {¶ 49} Moreover, State ex rel. Kroger Co. v. Indus. Comm. (1997),80 Ohio St.3d 483 ("Kroger I") is instructive. Kroger I is summarized and followed in State ex rel. Kroger Co. v. Indus. Comm. (1998),82 Ohio St.3d 231 ("Kroger II").
 {¶ 50} In Kroger I, the allowed psychiatric condition was "anxiety disorder with panic attacks." Throughout the numerous medical reports of record in that case, however, claimant's condition was variously referred to by her attending psychiatrist as "post traumatic stress disorder (secondary to industrial accident)," and/or "dysthymia." Kroger objected when temporary total disability compensation was based on one of those alternative diagnoses. The Kroger I court rejected that argument, writing:
 {¶ 51} "Compensable disability must arise exclusively from the claim's allowed conditions. Fox v. Indus. Comm. (1955), 162 Ohio St. 569
* * *. Ideally, the diagnosis contained on a disability form should mirror exactly the condition(s) allowed by the commission and, where it does not, closer examination may be warranted. Some degree of flexibility, however, seems particularly important when dealing with psychiatric conditions. As the Washington Supreme Court observed:
 {¶ 52} "`Psychology and psychiatry are imprecise disciplines. Unlike the biological sciences, their methods of investigation are primarily subjective and most of their findings are not based on physically observable evidence.' Tyson v. Tyson (1986), 107 Wn.2d 72,78[.] * * *
 {¶ 53} "The United States Supreme Court, in a criminal case, made a similar comment:
 {¶ 54} "`Psychiatric diagnosis in contrast, is to a large extent based on medical "impressions" drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient.' Addington v. Texas (1979),441 U.S. 418, 430, 99 S.Ct. 1804, 1811[.] * * *
 {¶ 55} "The reference to the nature of psychological diagnoses does not imply that these diagnoses are freely interchangeable. Clearly, major depression and paranoia are not the same and, in this case, all three disorders, PTSD, Dysthymia, and anxiety disorder with panic attacks, are distinct. Nevertheless, we find that the multiple psychological diagnoses are not fatal to claimant's compensation application. There are three reasons for this.
 {¶ 56} "First, regardless of the label attached, Dr. Blythe consistently referred to the same symptoms as being the cause of disability. Second, many of the symptoms are common to all three maladies. This largely explains why Dr. Blythe has had difficulty categorizing the disorder. Finally, Dr. Blythe has always related the relevant symptomatology to the industrial accident.
 {¶ 57} "Cumulatively, this indicates that the debilitating symptoms are industrially related. This is not a situation in which diagnostic flexibility will allow a physician to surreptitiously treat a claimant for a nonindustrial ailment. The problem seems to rest solely on Dr. Blythe's understandable inability to affix a single diagnosis to symptoms that fit several categories. For these reasons, the commission's reliance on Dr. Blythe's reports is not an abuse of discretion[.] * * *"
 {¶ 58} At oral argument before the magistrate, relator's counsel endeavored to point out that "major depressive disorder, single episode" and "major depressive disorder, recurrent," have their own diagnostic codes in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM IV). Relator's counsel suggests that, on that basis alone, this court must conclude that Dr. Balogh's reference to "recurrent major depression" is a reference to a non-allowed condition. The magistrate disagrees.
 {¶ 59} To begin, the magistrate notes that relator did not refer to DSM IV in its brief and, thus, respondents have not had an opportunity to respond to relator's presentation at oral argument regarding DSM IV. Thus, this court should not consider relator's argument based on DSM IV.
 {¶ 60} Moreover, the Kroger cases strongly suggest that relator's argument lacks merit.
 {¶ 61} According, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.