THE STATE EX REL. KROGER COMPANY, APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Kroger Co. v. Indus. Comm.* (1997), 80 Ohio St.3d 483.]

(No. 95–901—Submitted October 7, 1997—Decided December 31, 1997.)

484

486

*Porter, Wright, Morris & Arthur, Karl J. Sutter* and *Charles J. Kurtz II*, for appellant.

*Betty D. Montgomery*, Attorney General, and *William L. McDonald*, Assistant Attorney General, for appellee.

*John L. Berg*, for Wilma C. Williamson.

*Per Curiam.* Kroger challenges the award of temporary total disability compensation from July 18, 1991 to January 1, 1994, and gives two reasons why it should be set aside. Neither has merit.

Kroger's first argument asserts that claimant has reached permanency/maximum medical improvement ("MMI"), a finding of which bars temporary total disability compensation. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586; *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St.3d 31, 25 OBR 26, 494 N.E.2d 1125. Kroger initially claims that the return-to-work dates on Dr. Blythe's C–84's are so "distant [and] unrealistic" as to compel a finding of MMI.

The commission's broad evidentiary powers certainly permit it to discount a C–84 on the basis alleged by Kroger. In this case, however, the estimated return-to-work dates offered by Dr. Blythe were only eleven to twelve months distant. This is not unreasonable or unrealistic, nor is it uncommon.

Kroger also cites Dr. Blythe's October 6, 1991 assessment of a "somewhat guarded prognosis" as evidence of MMI. While this is language that would support an MMI finding (see *State ex rel. Cassity v. Montgomery Cty. Dept. of Sanitation* [1990], 49 Ohio St.3d 47, 550 N.E.2d 474), it does not compel it.

"Somewhat guarded prognosis" can be interpreted two ways. As *Cassity* shows, it can be read in favor of MMI. However, it can also suggest that improvement, while unlikely, has not been ruled out. In *State ex rel. Copeland Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 238, 559 N.E.2d 1310, we discussed a doctor's report that could be construed as either supporting or negating MMI:

"In the case before us, Dr. Braunlin stated in his report of September 17, 1986:

" 'I feel that he [claimant] has likely reached maximal recovery unless he attends a chronic pain and stress center which I feel might be quite helpful in dealing with the multitude of problems of which he still complains. * * * Unless additional improvement is made in a rehabilitation type program, I feel that he has likely reached maximal recovery.'

"Dr. Braunlin's comments are susceptible [of] differing interpretations. Given his suggestion that claimant may benefit from attendance at a chronic pain and stress clinic, we find that the commission's interpretation of that report did not constitute an abuse of discretion. It is thus some evidence supporting the commission's conclusion that claimant's disability was not yet permanent." *Id.* at 239, 559 N.E.2d at 1311.

The commission did not, therefore, abuse its discretion in refusing to interpret the October 6, 1991 report as evidence of maximum medical improvement.

Kroger also challenges what it perceives to be Dr. Blythe's partial reliance on nonallowed conditions. Psychologically, the claim has been allowed for "anxiety disorder with panic attacks." Dr. Blythe's November 6, 1991 C–84, however, lists claimant's present condition as "Post Traumatic Stress Disorder (Secondary to Industrial Accident), Panic Attacks, Dysthymia." PTSD and dysthymia are also discussed in Dr. Blythe's narratives, prompting Kroger's objection. Upon review, this argument proves unpersuasive.

Compensable disability must arise exclusively from the claim's allowed conditions. *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1. Ideally, the diagnosis contained on a disability form should mirror exactly the condition(s) allowed by the commission and, where it does not, closer examination may be warranted. Some degree of flexibility, however, seems particularly important when dealing with psychiatric conditions. As the Washington Supreme Court observed:

"Psychology and psychiatry are imprecise disciplines. Unlike the biological sciences, their methods of investigation are primarily subjective and most of their

findings are not based on physically observable evidence." *Tyson v. Tyson* (1986), 107 Wash.2d 72, 78, 727 P.2d 226, 229.

The United States Supreme Court, in a criminal case, made a similar comment:

"Psychiatric diagnosis in contrast, is to a large extent based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient." *Addington v. Texas* (1979), 441 U.S. 418, 430, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323, 333.

The reference to the nature of psychological diagnoses does not imply that these diagnoses are freely interchangeable. Clearly, major depression and paranoia are not the same and, in this case, all three disorders, PTSD, dysthymia, and anxiety disorder with panic attacks, are distinct. Nevertheless, we find that the multiple psychological diagnoses are not fatal to claimant's compensation application. There are three reasons for this.

First, regardless of the label attached, Dr. Blythe consistently referred to the same symptoms as being the cause of disability. Second, many of the symptoms are common to all three maladies. This largely explains why Dr. Blythe has had difficulty categorizing the disorder. Finally, Dr. Blythe has always related the relevant symptomatology to the industrial accident.

Cumulatively, this indicates that the debilitating symptoms are industrially related. This is not a situation in which diagnostic flexibility will allow a physician to surreptitiously treat a claimant for a nonindustrial ailment. The problem seems to rest solely on Dr. Blythe's understandable inability to affix a single diagnosis to symptoms that fit several categories. For these reasons, the commission's reliance on Dr. Blythe's reports is not an abuse of discretion, and the award of temporary total disability compensation from July 18, 1991 to January 1, 1994 is upheld.

Kroger lastly contends that the commission abused its discretion in extending temporary total disability compensation beyond December 31, 1993, given Dr. Blythe's declaration of MMI of that same date. The commission responds that it did not award temporary total disability compensation beyond that date, rendering Kroger's argument premature. The commission is factually correct. What Kroger is really arguing is that the commission erred in failing to declare claimant had reached MMI as of December 31, 1993. Kroger, however, did not raise this argument below. It cannot, therefore, be raised at this time.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.