[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 231.]

THE STATE EX REL. KROGER COMPANY, APPELLANT, *v.* INDUSTRIAL

COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Kroger Co. v. Indus. Comm.*, 1998-Ohio-379.]

*Workers' compensation—Industrial Commission's award of permanent total*
*disability compensation supported by "some evidence," when—*
*Commission's order complies with State ex rel. Noll when it explains its*
*reasoning.*

(No. 95-2081—Submitted May 27, 1998—Decided June 24, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD07-1107.

―――――――――――

{¶ 1} Appellee-claimant, Mildred Chambers, sustained two industrial injuries while employed by appellant, Kroger Company. The most serious occurred in 1982 and was originally allowed for "bruised right leg and knee; aggravation of pre-existing low-back strain."

{¶ 2} As early as 1986, doctors concluded that claimant's allowed physical conditions had reached maximum medical improvement/permanency. Dr. Richard B. Budde reported on November 28, 1986 that claimant's lumbar and, as then nonallowed, cervical conditions were permanent, and rendered claimant unable to do sustained remunerative employment. This report presumably prompted claimant's January 9, 1987 application for permanent total disability ("PTD") compensation.

{¶ 3} On January 29, 1987, Robert G. Tureen, Ph.D., opined that claimant was suffering from an adjustment disorder as a result of the chronic pain her industrial injury caused. This opinion resulted in claimant's motion for the additional allowance of a psychiatric condition. On February 8, 1988, Dr. Glenn M. Weaver, who examined claimant on behalf of appellee Industrial Commission

of Ohio, confirmed the presence of an adjustment disorder caused by claimant's industrial accident. Dr. Weaver also concluded that this condition was permanent. In 1989, claimant's workers' compensation claim was additionally allowed for "adjustment reaction as an aggravation of a pre-existing condition." Two years later, her claim was also allowed for "cervical strain."

{¶ 4} For reasons unknown, claimant's PTD application was not heard by the commission until 1994. The commission granted claimant's application, writing:

"The claimant was examined by Dr. Weaver, a psychiatrist, at the request of the Industrial Commission. Dr. Weaver opined that the allowed psychiatric condition interferes with the claimant's ability to work.

"The claimant was examined by Dr. Fox, an orthopedist, at the request of the Industrial Commission. Dr. Fox reported that the claimant has a significant psychological overlay. He opined that from an orthopedic standpoint, the claimant is unable to return to her former position of employment, with the physical restrictions of no frequent bending, kneeling, standing or lifting. Dr. Fox further opined that the claimant is unable to perform any work considering the psychological aspect of this claim.

"The Staff Hearing Officers find that the claimant is unable to return to her former position of employment due to the physical and psychological restrictions found by Dr. Fox and Dr. Weaver.

"The Staff Hearing Officers further find that the claimant is restricted to sedentary work with additional limitations due to the psychiatric condition which impacts on her ability to work.

"The Staff Hearing Officers find that the claimant is 56 years old, has a 10th grade education and work experience as a pricer-stocker.

"The Staff Hearing Officers find that the claimant's advanced age, limited education and work experience in combination with her medical limitations render her unable to perform any sustained remunerative employment.

"Permanent and total disability compensation is hereby awarded * * *.

"* * *

"The reports of Drs. Richard Budde (11/28/86), Dr. Robert Tureen (1/29/87), Dr. Dale Fox (11/11/86), Dr. Glenn Weaver (2/8/88), [and] Dr. Wayne Amendt (9/28/82), were reviewed and evaluated.

"This order is based particularly upon the report(s) of Dr. Fox, Dr. Budde, Dr. Weaver and Dr. Amendt."

{¶ 5} Kroger filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in awarding PTD compensation. The court of appeals disagreed and denied the writ.

{¶ 6} This cause is now before this court upon an appeal as of right.

————————————

*Porter, Wright, Morris & Arthur, Charles J. Kurtz III* and *Karl J. Sutter*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Steven P. Fixler*, Assistant Attorney General, for appellee Industrial Commission.

*Brown, Lippert, Heile & Evans* and *James W. Lippert*, for appellee claimant.

————————————

**Per Curiam.**

{¶ 7} Kroger challenges the commission's award of PTD compensation as unsupported by "some evidence," and as deficient under *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. We disagree.

{¶ 8} Contrary to Kroger's proposition, there is "some evidence" that the allowed conditions on which the commission relied in assessing PTD are indeed permanent. Dr. Weaver characterized claimant's psychological conditions as

permanent in 1988. Kroger responds that his report should be removed from consideration because he refers to claimant's adjustment disorder as one that *developed* as a result of the industrial injury rather than one that was *aggravated* by it—the latter term being expressly contained in the formal order of allowance.

{¶ 9} We do not find this distinction to merit evidentiary disqualification, having recently recognized that some latitude is necessary when dealing with psychological diagnoses. In *State ex rel. Kroger Co. v. Indus. Comm.* (1997), 80 Ohio St.3d 483, 687 N.E.2d 446, the allowed psychiatric condition was "anxiety disorder with panic attacks." Throughout the numerous medical reports of record in that case, however, claimant's condition was variously referred to by her attending psychiatrist as "post-traumatic stress disorder (secondary to industrial accident)" and/or "dysthymia." Kroger objected when temporary total disability compensation was based on one of those alternative diagnoses. We rejected Kroger's argument, writing:

"Compensable disability must arise exclusively from the claim's allowed conditions. *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1. Ideally, the diagnosis contained on a disability form should mirror exactly the condition(s) allowed by the commission, and where it does not, closer examination may be warranted. Some degree of flexibility, however, seems particularly important when dealing with psychiatric conditions. As the Washington Supreme Court observed:

" 'Psychology and psychiatry are imprecise disciplines. Unlike the biological sciences, their methods of investigation are primarily subjective and most of their findings are not based on physically observable evidence.' *Tyson v. Tyson* (1986), 107 Wash.2d 72, 78, 727 P.2d 226, 229.

"The United States Supreme Court, in a criminal case, made a similar comment:

" 'Psychiatric diagnosis, in contrast, is to a large extent based on medical "impressions" drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient.' *Addington v. Texas* (1979), 441 U.S. 418, 430, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323, 333.

"The reference to the nature of psychological diagnoses does not imply that these diagnoses are freely interchangeable. Clearly, major depression and paranoia are not the same and, in this case, all three disorders, PTSD, dysthymia, and anxiety disorder with panic attacks, are distinct. Nevertheless, we find that the multiple psychological diagnoses are not fatal to claimant's compensation application. There are three reasons for this.

"First, regardless of the label attached, Dr. Blythe consistently referred to the same symptoms as being the cause of disability. Second, many of the symptoms are common to all three maladies. This largely explains why Dr. Blythe has had difficulty categorizing the disorder. Finally, Dr. Blythe has always related the relevant symptomatology to the industrial accident.

"Cumulatively, this indicates that the debilitating symptoms are industrially related. This is not a situation in which diagnostic flexibility will allow a physician to surreptitiously treat a claimant for a nonindustrial ailment. The problem seems to rest solely on Dr. Blythe's understandable inability to affix a single diagnosis to symptoms that fit several categories. For these reasons, the commission's reliance on Dr. Blythe's reports is not an abuse of discretion * * *." *Id.* at 489-490, 687 N.E.2d at 452.

{¶ 10} In this instance, Dr. Weaver clearly related claimant's adjustment reaction—by name—to her industrial injury. We do not, therefore, find that Dr. Weaver's description of claimant's condition invalidates his opinion as to the permanency of that condition.

{¶ 11} Kroger also argues that Dr. Weaver's report is too old to be probative. This assertion, however, ignores the commission's role as exclusive evaluator of evidentiary weight and credibility. *State ex rel. Burley v. Coil Packing, Inc*. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. In this case, the commission apparently found that Dr. Weaver's assessment of permanency was unaffected by the passage of time. This was within the commission's prerogative.

{¶ 12} There is also "some evidence" supporting the permanency of claimant's allowed physical conditions. Dr. Budde stated in 1986 that claimant's cervical and lumbar conditions had reached maximum medical improvement/permanency. Kroger again asserts the report's age as a defense—an argument we reject for the reasons given above. We also do not find that the validity of Dr. Budde's conclusion is affected by the fact that in 1986, claimant's cervical condition was not yet an allowed condition. Legal recognition of a condition does not change the condition's medical characteristics.

{¶ 13} Kroger lastly argues that the commission's order does not satisfy *Noll*. This contention is unpersuasive. After finding claimant to be medically capable of sustained remunerative work, the commission was required to examine claimant's nonmedical disability factors and their effect on claimant's re-employment potential. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. The commission did this and explained its findings within its order. This explanation, while brief, is nevertheless sufficient to satisfy *Noll*. The commission found that claimant's age, education, and work history were obstacles that, when combined with her medical condition, removed her from the labor force. *Noll* requires no more in this instance.

{¶ 14} The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

January Term, 1998

_____