DECISION
IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION
 {¶ 1} Relator, Sunoco, Inc., commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent James L. Robey ("claimant"), and to enter an order denying said compensation. *Page 2 
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's request for a writ of mandamus. Relator does not object to the magistrate's findings of fact but it has filed objections challenging the magistrate's conclusions of law. Because relator has filed objections to the magistrate's decision, this matter is now before this court for a full, independent review.
 {¶ 3} By its objections, relator argues that the magistrate incorrectly determined that Dr. Anthony Alfano's reports constituted "some evidence" upon which the commission could rely in awarding PTD compensation. Relator contends that Dr. Alfano's reports were equivocal, internally inconsistent, and that he relied upon nonallowed conditions. In his decision, the magistrate considered and rejected these contentions. Relator argues that the magistrate improperly reasoned that "psychiatric diagnoses are imprecise and there is no real distinction between the nonallowed generalized anxiety disorder and the allowed conversion disorder with anxiety symptoms." (Relator's memorandum in support of objections, at 3.) Relator asserts that a review of the diagnostic criteria identified in the Diagnostic and Statistical Manual of Mental Disorders (4 Ed.1994), published by the American Psychiatric Association ("DSM-IV"), for generalized anxiety disorder and conversion disorder, demonstrates a lack of concurrence of criteria between the two psychological conditions. In addition, relator argues that the magistrate's reliance upon State ex rel. Kroger Co. v. Indus. Comm.
(1998), 82 Ohio St.3d 231 ("Kroger II"), was misplaced because the facts of the case at bar are distinguishable from that case. *Page 3 
 {¶ 4} Relator mischaracterizes the magistrate's reasoning. The magistrate did not find "no real distinction between the nonallowed generalized anxiety disorder and the allowed conversion disorder with anxiety symptoms." In addressing relator's argument that conversion disorder and generalized anxiety disorder are separate conditions, the magistrate noted that the industrial claim is allowed for "conversion disorder with anxiety symptoms," and, thus, is not just allowed for conversion disorder. Hence, the magistrate reasoned that relator's argument for the separation of conditions ignores the commission's recognition of "anxiety symptoms." In addition, the magistrate, citingKroger II, and State ex rel. Kroger Co. v. Indus. Comm., (1997),80 Ohio St.3d 483 ("Kroger I"), noted that relator's argument fails to recognize that a degree of flexibility is important when dealing with psychiatric conditions. In this regard, we find no error in the magistrate's reference to the Kroger cases in support of his position that Dr. Alfano's reports constituted some evidence upon which the commission could rely in awarding PTD compensation.
 {¶ 5} Upon reviewing the record, we agree with the magistrate's analysis regarding relator's argument that Dr. Alfano's reports were equivocal, internally inconsistent, and that he relied upon nonallowed conditions. Therefore, for the reasons expressed in the magistrate's decision, we conclude that there was some evidence upon which the commission could rely in finding that the claimant was incapable of sustained remunerative employment. Moreover, because we conclude that the commission did not abuse its discretion in relying upon Dr. Alfano's reports in awarding PTD compensation, it is unnecessary to analyze the commission's alternative basis for awarding PTD *Page 4 
compensation, in which the commission relied upon Dr. Daniel Franklin's report and analyzed nonmedical factors.
 {¶ 6} Relator also challenges the magistrate's determination that the commission did not abuse its discretion by denying relator's motion for the exercise of continuing jurisdiction based upon alleged newly discovered evidence concerning a nonallowed condition. In reaching his conclusion regarding this issue, the magistrate resolved that the fact that the claimant may be further disabled due to "complex partial seizure disorder," a condition not allowed in the claim, is irrelevant to the commission's PTD determination concerning the allowed psychological conditions. Relator argues that this analysis is flawed. According to relator, the newly discovered evidence was relevant to the PTD determination because it "tends to prove or disprove the true nature of [claimant's] disability." Clearly, relator seeks to use the evidence concerning a nonallowed condition to challenge claimant's entitlement to PTD compensation. However, as correctly noted by the magistrate, nonallowed medical conditions cannot be used to advance or defeat a claim for PTD compensation. See State ex rel. Waddle v. Indus.Comm. (1993), 67 Ohio St.3d 452; see, also, State ex rel. Marlow v.Indus. Comm., Franklin App. No. 05AP-970, 2007-Ohio-1464; State ex rel.Sears Roebuck Co. v. Indus. Comm., Franklin App. No. 05AP-1135,2007-Ohio-838; and State ex rel. Benjamin Rose Inst. v. Indus.Comm., Franklin App. No. 04AP-1194, 2005-Ohio-4818, all citingWaddle for this principle of law. Thus, we agree with the magistrate's determination that the commission did not abuse its discretion in denying relator's motion for the exercise of continuing jurisdiction. *Page 5 
 {¶ 7} Following our independent review of this matter, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Thus, we overrule relator's objections, and adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
 KLATT and WHITESIDE, JJ., concur. WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A {¶ 8} In this original action, relator, Sunoco, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent James L. Robey, and to enter an order denying said compensation.
Findings of Fact: *Page 7 {¶ 9} 1. On July 31, 2001, James L. Robey ("claimant") sustained an industrial injury while employed as an electrician for relator, a self-insured employer under Ohio's workers' compensation laws. Claimant had worked for relator for some 17 years. On that date, claimant sustained head injuries when a co-worker operating a backhoe knocked over some equipment where claimant was working. On that date, claimant was transported to a hospital emergency room where he underwent cervical spine x-rays and a CT scan which were negative. A laceration of the forehead was sutured and it was observed that claimant had bleeding from his left ear. Claimant has not worked since the date of injury.
 {¶ 10} 2. The industrial claim is allowed for "cervical sprain/strain; laceration/contusion, forehead; post concussion syndrome; injury to left ear tympanic membrane; conversion disorder with anxiety symptoms," and is assigned claim number 01-838375. The claim is disallowed for "hypertension; adjustment disorder with mixed anxiety and depressed mood." The "conversion disorder with anxiety symptoms" was allowed by a district hearing officer ("DHO") following a September 13, 2002 hearing.
 {¶ 11} 3. Unfortunately, the parties did not submit to the stipulated record the DHO's order of September 13, 2002, nor the medical evidence the DHO relied upon to support the psychological claim allowance. However, it should be noted that in the October 22, 2004 report of Daniel Franklin, M.D., a portion of the June 13, 2002 report of clinical neural psychologist Dr. J. Flexman is quoted: "The evidence does support a conversion disorder with significant anxiety as a sub-component of this disorder."
 {¶ 12} 4. On May 15, 2002, clinical psychologist Anthony M. Alfano, Ph.D., began treating claimant. *Page 8 
 {¶ 13} 5. Two years later, on May 6, 2004, Dr. Alfano wrote:
 * * * I have taught him relaxation and visualization, which are techniques that he uses to help control his pain and anxiety. We have engaged in psychotherapy. He has been diagnosed as having a Generalized Anxiety Disorder 300.2. During the course of treatment, Mr. Robey has made some improvement. His depression level certainly has been lowered, and his anxiety has lessened somewhat.
 However, major impairment still exists that are unlikely to be resolved. The following are several examples of these behavioral impairments. He is no longer able to do electrical wiring, which is something that he has done in his professional career as an electrician. He loses patience very quickly[.] * * *
 He is still having short-term memory problems. He still has concentration difficulties. He also gets lost going to what had been familiar places in town. He is unable to organize a plan on how to get to a certain store that he has been at many times before. When going shopping at a store, Mr. Robey stated that when leaving the store, he cannot remember where his car is parked and has to go down row by row, before he can find his car. His wife reported that he often forgets activities that they are planning to do. He has lost his ability to estimate his time that it takes him to get ready to go someplace. Recently, he attempted to take some college courses at Rhodes State College, and he reported that he was always late to classes because he forgot when the classes began. He also did not allow himself enough time to get ready and travel to the class before the class period began; or he has forgotten to go until two hours after the class ended.
 * * *
 [One] Activities of Daily Living: He is having communication difficulties. He has problems in understanding what people tell him. Although he is able to ambulate, he has trouble, as he gets lost or forgets where he is going. He has difficulties in traveling, as noted above. His wife reported that their normal sexual functioning has been reduced by 75%. He has difficulty sleeping. When he wakes up during the night, he has difficulty falling back to sleep. He is no longer able to socialize with other people. He does not *Page 9 
like to go to social functions, except if it is to see close relatives. Even then, he wants to leave as soon as possible. (I know that prior to this work-related accident, that he was a very social and talkative person.) He no longer engages in any recreational activities. * * *
 [Two] Social Functioning: In reviewing the Social Functioning area, Jim is unable to engage in any social functioning at this time. He is not comfortable being around people that he does not know. He avoids inter-personal relationships, and he is socially isolated. * * *
 [Three] Concentration: As stated above, this patient has very poor concentration, which leads to poor short-term and long-term memory. He also has developed sleep apnea. He recently went for a new sleep study, and they determined that his sleep apnea scores had tripled, which indicates that the condition is getting more severe. This affects his sleeping, and therefore since he is not getting a good night's sleep, that lowers his concentration levels and affects his memory.
 [Four] Adaptation: Finally, this patient has not been able to adapt to his disability, so that he could do some type of work. He has had spontaneous recovery from the brain injury, but it has not occurred to a level that would make him employable. He has tried to make efforts towards his rehabilitation, but has not reached a level where it is unlikely that he will improve significantly.
 Therefore, at this time I feel that Mr. Robey has attained Maximum Medical Improvement and he should receive permanent total disability, as he is totally and permanently disabled.
 {¶ 14} 6. On May 21, 2004, Dr. Alfano wrote:
 * * * I have been treating the above-named patient for a psychological condition that is a direct result of the work-related accident that occurred on 07-31-01.
 In my opinion, and to a reasonable degree of psychological probability, the psychological condition is a direct and proximate result of his work-related injury. He as [sic] been disabled since July of 2001, and in my opinion, he is totally and permanently disabled. *Page 10 
 {¶ 15} 7. On June 23, 2004, claimant filed an application for PTD compensation.
 {¶ 16} 8. On July 16, 2004, Dr. Alfano wrote:
 * * * When initially seen on 05-15-02, he was very depressed and anxious. At this time he is still very anxious. I feel that although his condition has improved, he still is unable to handle the stress that would be caused by him driving to and from Toledo and having an evaluation there. In my opinion, I feel that he is too psychologically unstable to make this trip. However, he could attend an IME here in the local area. The closed head injury that he received has left him with permanent damage. He will most likely never fully recover psychologically from this injury.
 {¶ 17} 9. On September 15, 2004, Dr. Alfano wrote:
 CURRENT COMPLAINT HISTORY: The patient stated that he still gets the syncope episodes daily. In addition to the medication prescribed to him, he is able to deal with these episodes by doing the relaxation techniques for about twenty minutes, and then he can continue with his activity. His concentration and short-term memory problems have not improved. He still forgets appointments. He has been unable to engage in any type of electrical maintenance work, i.e. wiring a room or repairing existing wiring. Even though he has done this all of his life, he has lost his ability to do this in an effective manner. He stated that he no longer has the dexterity to pick up a bolt or to put it in place. He attempted to go to college and take some courses, but he was unable to do this because he has difficulty retaining the information, which makes it impossible for him to take the tests. He stated that he recently took two courses, Welcome to the Internet, and Mini Computers and Micro Processors. Both of these are areas where he had previous knowledge. However, because of his inability to retain what he reads and what he hears in the lectures, he was only able to get a D in each course. He reported that he is still only able to sleep up to four hours at a time without waking. * * *
 DIAGNOSIS: Conversion Disorder With Anxiety Symptoms 300.11.
 RECOMMENDATIONS: I will continue to see him approximately one to two times per month. As he is not able *Page 11 
to go to college and learn new work skills, and he is apparently unable to remember the type of work that he has done all of his life, he is now permanently and totally disabled. I feel that his conditions are severe and that he will never work in competitive employment again.
 {¶ 18} 10. On December 13, 2004, Dr. Alfano wrote:
 I have read the report of the "Confidential Psychological Evaluation" of Mr. James Robey, which was written by Christopher Layne, Ph.D. on August 13, 2004, based on an Independent Medical Evaluation. As can clearly be seen on page 17 of the evaluation, he administered the MMPI-2 and there were elevations on the Hysteria, Hypochondriasis, and Depression Scales. According to James Butcher in his book entitled Assessment of Chronic Pain Patients With The MMPI-2, Copyright 1991, the three most commonly elevated scales for pain patients are the three scales listed above. Dr. Butcher is the psychologist who was responsible for the revision of the MMPI-2 and is the world's most eminent authority on this test. As can be seen clearly by Dr. Layne's report, the Depression Scale is above 65T, which places it into the abnormal range. Thus, Mr. Robey continues to be depressed.
 In a recent report by Robert Bornstein, who is a neuropsychologist and Associate Dean of The Ohio State University Medical School, he also indicates that Mr. Robey's neuropsychological symptoms have worsened. I have also talked with his wife, and she stated that his ability to use his electronics skills is also almost non-existent at this time, despite the fact that he has worked in this field his entire life. It is therefore apparent to Mr. Robey that his condition is worsening and that he probably will never work again.
 This awareness that he is not getting better and that his condition is worsening has increased his feeling of depression. That is why I need to continue treatment with him, to help him gain acceptance of his current skills and ability level, so that he can go on with his life despite the fact that he will never work again. In summary, I believe him to be permanently and totally disabled.
 {¶ 19} 11. On December 30, 2004, Dr. Alfano wrote: *Page 12 
 * * * Mr. Robey attempted to attend Rhodes State College. He took a history class and two computer classes. The history course was given two hours a week, and he had a lot of time to prepare between both class periods. It was an American History course, which allowed him to draw on his long-term memory, and he earned a B in the course. He then tried two computer courses, entitled Introduction To The Interned and Computer Applications In The Workplace. Both of these courses involved learning new information, which he previously had not been exposed to in the past. Both of these courses required him to remember a series of commands, and he was unable to remember those commands. Therefore, he did less than satisfactory in both of these classes. After his being enrolled in these classes, I realized that pencil-and-paper-based evaluations are not a fair assessment of his vocational deficiencies. While attending Rhodes State College, Mr. Robey was given special accommodations, which allowed him more time to take the examinations. Even with the extended testing time, he was unable to satisfactorily pass these courses.
 He has also been evaluated by Dr. Robert Bornstein, who is a neuropsychologist at The Ohio State University Medical School. Dr. Bornstein, in his original assessment, found deficits. However, in the most recent assessment he was able to show that the deficits have increased, so that Mr. Robey is less able to function now than he was even two years ago.
 Dr. Bornstein's neuropsychological evaluations are performance-based, and that is why he was able to show the deficits in his current mental functioning. I, therefore, would like to recommend that if the Industrial Commission needs to evaluate his vocational abilities, that a performance-based evaluation be done by someone using a performance-based vocational evaluation procedure, i.e. the Singer or JEVS System[.] Someone with a degree as a vocational adjudicator should be able to perform this type of testing.
 In summary, I want to inform the Industrial Commission that Mr. Robey's deficits are not readily seen and are more apparent when he is asked to do a performance-based evaluation. *Page 13 
 {¶ 20} 12. Earlier, on October 22, 2004, claimant was examined at relator's request by Daniel Franklin, M.D. Dr. Franklin rendered a five-page report. Under "opinions and comments," Dr. Franklin wrote:
 QUESTION #1: Based on review of the medical records and findings on examination and Mr. Robey's allowed physical conditions, do you consider Mr. Robey to be permanently and totally disabled as a result of the allowed physical condition in this claim?
 ANSWER: No, I believe Mr. Robey is capable of performing work at home, e.g. telemarketing and/or survey's by phone. He would not be able to perform moderate to heavy work or work requiring driving to and from work beyond 5-10 minutes as a result of his physical limitations resulting from the injury of record.
 {¶ 21} 13. Claimant's counsel requested a vocational evaluation from Carl W. Hartung, a vocational expert. Hartung issued a report dated January 19, 2005.
 {¶ 22} 14. Following an August 24, 2005 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation. The SHO's order, mailed September 7, 2005, explains:
 Permanent and Total Disability Compensation is hereby awarded from 05/06/2004[.] * * *
 * * * This order is based particularly upon the reports of Daniel Franklin, M.D., 10/12/2004; Carl Hartung, M.R.C., C.R.C., A.B.D.A., N.C.C., 01/19/2005; Anthony Alfano, Ph.D., 09/15/2004, 12/13/2004, 12/30/2004, 05/06/200[4].
 This claim had its onset on 07/31/2001. At that time, Mr. Robey was struck in the head by a backhoe bucket. The claim was originally allowed for Cervical Sprain/Strain, by the self-insured employer. The claim allowances were clarified by District Hearing Officer hearing in 2002 to include Laceration/Contusion of the Forehead; Post Concussion Syndrome; and Injury to the Left Ear, Tympanic Membrane. A Conversion Disorder with Anxiety symptoms were allowed in 2003, also. A multitude of differing opinions regarding Mr. *Page 14 
Robey's ability to work and restrictions related to the allowed conditions within this claim have been presented. However, this Staff Hearing Officer finds the independent medical examining physician, Dr. Franklin, regarding physical conditions, to be most persuasive. Dr. Franklin examined Mr. Robey for the self-insured employer on 10/12/2004. Dr. Franklin indicated that the restrictions, due to allowed conditions, limited Mr. Robey to work at home. He indicated limitations would be that, "(Mr. Robey) would not be able to perform moderate to heavy work or work requiring driving to and from work beyond 5-10 minutes as a result of his physical conditions resulting from the injury of record." Dr. Franklin also opined that Mr. Robey was at Maximum Medical Improvement (MMI) for the allowed physical conditions.
 Dr. Franklin is found to be persuasive that Mr. Robey is at MMI for the allowed physical conditions within this claim. Further, Dr. Franklin is found to be persuasive that the physical conditions allowed within this claim prevent Mr. Robey from returning to his prior position of employment. Further, the restrictions offered by Dr. Franklin limit Mr. Robey to light to sedentary employment with an ability to drive only 5-10 minutes to his place of employment. In fact, Dr. Franklin limited Mr. Robey to working at home.
 Mr. Hartung reviewed vocational factors related to Mr. Robey. Mr. Hartung opined that Mr. Robey was not retrainable for any new position due to multiple factors. Mr. Hartung also opined that Mr. Robey had no transferable skills related to his prior positions of employment. Mr. Robey is 55 years of age. His age is found to be a negative factor. Mr. Robey has had no recent educational experiences. In fact, Mr. Robey attempted re-education during Vocational Rehabilitation without success. Therefore, Mr. Robey's limited ability to learn, at this time, is found to be a negative factor. Further, Mr. Robey's prior work experiences involve what might be construed as outdated information. Technological advances in the electronics field appear to have put Mr. Robey at a disadvantage. Therefore, it is found by this Staff Hearing Officer that Mr. Robey has no transferable skills.
 This Staff Hearing Officer finds that Mr. Robey has no transferrable skills to the light to sedentary work force. Further, his age and learning deficits make him a poor *Page 15 
candidate for re-training such that Mr. Robey could eventually qualify for light to sedentary work. Consequently, his disability factors objectively viewed, in combination with his physical injury, preclude him from presently or in the future qualifying for light to sedentary work.
 The injured worker's treating psychologist, Dr. Alfano, has offered multiple reports indicating an inability for Mr. Robey to return to work due to the psychological conditions allowed within this claim. As an alternative to the previously discussed physical limitations in conjunction with [State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167] factors, this Staff Hearing Officer finds that Dr. Alfano is persuasive that the allowed psychological condition within this claim has permanently and totally disabled Mr. Robey.
 Based upon the report of Dr. Alfano, it is found that the injured worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed psychological conditions. Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the injured worker's non-medical disability, as related to the psychological condition.
 {¶ 23} 15. On or about September 12, 2005, claimant moved that the claim be additionally allowed for "complex partial seizure disorder." In support of his motion, claimant submitted two reports from Richard Nockowitz, M.D., dated April 25 and May 9, 2005. The April 25, 2005 report states:
 I saw James Robey today for neuropsychiatric evaluation and treatment. He has mental symptoms due to traumatic brain injury, but also due to ongoing complex partial seizures that are a direct consequence of the head injury. These seizures cause a great deal of disability, as does his underlying impairment from the brain injury itself. * * *
 {¶ 24} 16. On September 21, 2005, relator moved for reconsideration of the SHO's order of August 24, 2005. *Page 16 
 {¶ 25} 17. On October 12, 2005, the commission mailed an order denying relator's September 21, 2005 motion for reconsideration.
 {¶ 26} 18. On October 27, 2005, claiming newly discovered evidence, relator moved the commission to exercise its R.C. 4123.52 continuing jurisdiction to vacate the SHO's order of August 24, 2005. According to a memorandum submitted by relator in support of its October 27, 2005 motion, the two reports from Dr. Nockowitz constitute new evidence that claimant's disability is caused by a nonallowed condition. In the memorandum, relator claimed that Dr. Nockowitz's reports were not disclosed to relator until September 12, 2005.
 {¶ 27} 19. Following a January 20, 2006 hearing, the same SHO who heard the PTD application on August 24, 2005, issued an order denying relator's October 27, 2005 motion. The SHO's order of January 20, 2006 explains:
 Therefore, this Staff Hearing Officer declines to invoke continuing jurisdiction under O.R.C. Section 4123.52 to VACATE the Staff hearing Officer's order of 08/24/2005 awarding Permanent and Total Disability Benefits and setting this matter for re-hearing on Permanent and Total Disability.
 The employer argues that new and changed circumstances in the form of new evidence that could not have been timely obtained for the Staff Hearing on Permanent and Total Disability is the reason for invoking continuing jurisdiction.
 The Ohio Supreme Court has held that to establish a basis for continuing jurisdiction the moving party must establish that there had been one or more of the following: (1) New and changed circumstances subsequent to the initial order; (2) New evidence that could not have been obtained timely; (3) Fraud in the claim; (4) A clear mistake of fact in the order; (5) A clear mistake of law; (6) An error by an inferior administrative tribunal or subordinate Hearing Officer. See State ex rel. Nichollas v. Ind. Comm. (1998), *Page 17 81 Ohio St.3d 458; State ex rel Foster v. Ind. Comm. (1999), 88 Ohio St. 3d 320.
 The employer argues that the medical evidence attached to injured worker's motion requesting an additional condition, filed after the Permanent and Total Disability Award, constitutes new and changed circumstance such that continuing jurisdiction should lie. The medical evidence attached to the motion clearly was not available to the employer prior to the date of hearing for Permanent and Total Disability. The fact that new medical reports have arisen, in and of themselves is not sufficient cause for invoking continuing jurisdiction. The relevance of the new medical information must be weighed. The employer argued that the medical reports indicate injured worker is disabled due to non-allowed conditions and therefore rise to the level of requiring this matter to be re-addressed. The report of 05/09/2005 from Dr. Nockowitz offers no opinion regarding disability. The report from Dr. Nockowitz, dated 04/24/2005, indicates that seizures (the condition requested after the Permanent and Total Disability hearing) "cause a great deal of disability." The report does not offer that the alleged condition causes Permanent and Total Disability or is the condition preventing injured worker from returning to work.
 This Staff Hearing Officer notes that the employer of record argued that non-allowed conditions were the cause of disability at the Permanent and Total Disability hearing after which Permanent and Total Disability was awarded.
 More importantly, this Staff Hearing Officer notes the full commission, after the employer's motion for reconsideration, addressed whether new and changed circumstances and/or newly discovered evidence, of fraud, a clear mistake of fact, a clear mistake of law or an error by an inferior administrative agent or subordinate hearing officer had occurred. The full commission declined to take continuing jurisdiction and re-address the issue of Permanent and Total Disability. Therefore, this Staff Hearing Officer finds the issue of re-opening this matter under continuing jurisdiction based upon the reports from Dr. Nockowitz is a matter of res judicata.
 Alternatively, this Staff Hearing Officer finds that the reports from Dr. Nockowitz, while they are reports the employer did *Page 18 
not have prior to hearing, are not evidence pertinent to the decision made on 08/24/2005.
 Specifically, the employer Independent Medical Evaluation, for the Permanent and Total Disability hearing limited the injured worker to working at home at most. Based upon those restrictions, restrictions for the allowed conditions within this claim, and the injured worker's Stephenson factors the Staff Hearing Officer found the injured worker to be Permanently and Totally Disabled, therefore, the newly discovered medical records are not relevant to the Permanent and Total Disability order.
 The Staff Hearing Officer reviewed and considered all evidence on file at the time of the hearing.
 This order is based upon the Staff Hearing Officer order of 08/24/2005 and record of proceedings from the full Industrial Commission, dated 09/21/2005.
(Emphasis sic.)
 {¶ 28} 20. On January 20, 2006, a DHO heard claimant's September 12, 2005 motion that the claim be additionally allowed for "complex partial seizure disorder." Following the hearing, the DHO issued an order denying claimant's motion.
 {¶ 29} 21. Claimant administratively appealed the January 20, 2006 DHO's order.
 {¶ 30} 22. Following a March 13, 2006 hearing, an SHO issued an order stating that the DHO's order of January 20, 2006 is modified, but, nevertheless, denying claimant's motion for an additional claim allowance.
 {¶ 31} 23. On April 7, 2006, another SHO mailed an order refusing claimant's administrative appeal from the March 13, 2006 SHO's order.
 {¶ 32} 24. On April 17, 2006, relator, Sunoco, Inc., filed this mandamus action.
Conclusions of Law: *Page 19 {¶ 33} The commission, through its SHO's order of August 24, 2005, presented alternative bases for its award of PTD compensation. Based upon the reports of Dr. Alfano, the commission determined that the allowed psychological conditions caused PTD and, thus, it was not necessary to analyze the nonmedical factors. Alternatively, the commission determined claimant's residual functional capacity exclusive of the psychological conditions based upon Dr. Franklin's report and, upon analysis of the nonmedical factors, determined that claimant is permanently and totally disabled.
 {¶ 34} Here, relator challenges the commission's reliance upon the medical reports of Drs. Alfano and Franklin. Relator also challenges the commission's analysis of the nonmedical factors.
 {¶ 35} Because the magistrate finds that relator's challenge to the commission's reliance upon Dr. Alfano's reports lacks merit, there is no need to address relator's challenge to Dr. Franklin's report, nor relator's challenge to the commission's nonmedical analysis.
 {¶ 36} Relator also contends that the commission abused its discretion by denying relator's motion for the exercise of continuing jurisdiction based upon alleged newly discovered evidence. The magistrate also finds that this argument lacks merit.
 {¶ 37} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 38} It is well-settled that claimant has the burden of showing that one or more allowed conditions of the claim is the proximate cause of his claimed disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. Nonallowed conditions cannot be used to advance or defeat a claim for compensation. Id. The mere presence of a *Page 20 
nonallowed condition in a claim for compensation does not itself destroy the compensability of the claim, but the claimant must meet his burden of showing that an allowed condition independently causes disability.State ex rel. Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 39} Moreover, equivocal medical opinions are not evidence.State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 40} Also, a medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. State exrel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel.Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582.
 {¶ 41} Here, relator challenges the commission's reliance upon Dr. Alfano's reports:
 The Commission's reliance on Dr. Alfano's reports is * * * flawed because it is clear that Dr. Alfano found [claimant] permanently and totally disabled based on non-allowed conditions. Dr. Alfano's May 6, 2004 report provides that [claimant] is permanently and totally disabled based on "Generalized Anxiety Disorder 300.02," a condition for which the claim is not allowed. * * * Additionally, the May 6, 2004 report provides that [claimant] suffers from poor concentration and short term and long term memory problems, which Dr. Alfano opined are due to [claimant's sleep apnea. * * * In his September 15, 2004 report, Dr. Alfano noted the correct psychological allowance (conversion disorder with anxiety), yet he described how [claimant's complaints are related to the [claimant's memory problems and ultimately found [claimant] permanently and totally disabled because of his inability to remember. * * * In his December 13, 2004 report, Dr. Alfano maintained that [claimant] is permanently and totally *Page 21 
disabled while stating his treatment is for "depression," another non-allowed condition. * * * Finally, Dr. Alfano's December 30, 2004 report discussed the effect of [claimant]'s memory deficits on his vocational abilities. * * *
 In sum, Dr. Alfano attributed [claimant]'s permanent disability to the non-allowed generalized anxiety disorder, depression, and sleep apnea, as well as the allowed conversion disorder with anxiety. * * * Dr. Alfano's reports do not constitute some evidence supporting the Commission's order. * * *
 * * *
 * * * Dr. Alfano's reports are internally inconsistent because he attributed permanent disability to four separate conditions, namely the non-allowed generalized anxiety disorder, depression, and sleep apnea, and the allowed conversion disorder with anxiety, yet failed to explain or account for the disparity among the reports.
(Relator's brief, at 11-12, 14; emphasis sic.)
 {¶ 42} In its reply brief, relator cites to the Diagnostic and Statistical Manual of Mental Disorders (4 Ed.1994), published by the American Psychiatric Association ("DSM-IV"), for the proposition that conversion disorder, generalized anxiety disorder, depression, and sleep apnea "are all separate conditions." Id. at 6. Relator then argues:
 Dr. Alfano never opines that the treatment and diagnosis of conversion disorder, a hypochondriacal condition, overlaps the treatment and diagnosis of depression, sleep apnea, and generalized anxiety disorder. In fact, Dr. Alfano's own records demonstrate otherwise. * * *
Id.
 {¶ 43} Analysis begins with reference to the DSM-IV criteria for conversion disorder and for generalized anxiety disorder.
 {¶ 44} DSM-IV's diagnostic criteria for 300.11 conversion disorder is:
 A. One or more symptoms or deficits affecting voluntary motor or sensory function that suggest a neurological *Page 22 
or other general medical condition.
 B. Psychological factors are judged to be associated with the symptom or deficit because the initiation or exacerbation of the symptom or deficit is preceded by conflicts or other stressors.
 C. The symptom or deficit is not intentionally produced or feigned (as in Factitious Disorder or Malingering).
 D. The symptom or deficit cannot, after appropriate investigation, be fully explained by a general medical condition, or by the direct effects of a substance, or as a culturally sanctioned behavior or experience.
 E. The symptom or deficit causes clinically significant distress or impairment in social, occupational, or other important areas of functioning or warrants medical evaluation.
 F. The symptom or deficit is not limited to pain or sexual dysfunction, does not occur exclusively during the course of Somatization Disorder, and is not better accounted for by another mental disorder.
 Specify type of symptom or deficit:
 With Motor Symptom or Deficit
 With Sensory Symptom or Deficit
 With Seizures or Convulsions
 With Mixed Presentation
(Emphasis sic.)
 {¶ 45} DSM-IV's diagnostic criteria for 300.02 generalized anxiety disorder is:
 A. Excessive anxiety and worry (apprehensive expectation), occurring more days than not for at least 6 months, about a number of events or activities (such as work or school performance).
 B. The person finds it difficult to control the worry.
 C. The anxiety and worry are associated with three (or more) of the following six symptoms (with at least some symptoms present for more days than not for *Page 23 
the past 6 months). Note: Only one item is required in children.
 (1) restlessness or feeling keyed up or on edge
 (2) being easily fatigued
 (3) difficulty concentrating or mind going blank
 (4) irritability
 (5) muscle tension
 (6) sleep disturbance (difficulty falling or staying asleep, or restless unsatisfying sleep)
 D. The focus of the anxiety and worry is not confined to features of an Axis I disorder, e.g., the anxiety or worry is not about having a Panic Attack (as in Panic Disorder), being embarrassed in public (as in Social Phobia), being contaminated (as in Obsessive-Compulsive Disorder) being away from home or close relatives (as in Separation Anxiety Disorder), gaining weight (as in Anorexia Nervosa), having multiple physical complaints (as in Somatization Disorder), or having a serious illness (as in Hypochondriasis), and the anxiety and worry do not occur exclusively during Posttraumatic Stress Disorder.
 E. The anxiety, worry, or physical symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.
 F. The disturbance is not due to the direct physiological effects of a substance (e.g., a drug of abuse, a medication) or a general medical condition (e.g. hyperthyroidism) and does not occur exclusively during a Mood Disorder, a Psychotic Disorder, or a Pervasive Developmental Disorder.
 {¶ 46} Analysis continues with the observation that the industrial claim is allowed for "conversion disorder with anxiety symptoms." That is, the industrial claim is not just allowed for conversion disorder. The words "with anxiety symptoms" must be given effect as well as the "conversion disorder" language of the claim allowance. Relator's argument for the separation of conditions improperly suggests that the commission's recognition of "anxiety symptoms" should be ignored. *Page 24 
 {¶ 47} Given the claim is allowed for "conversion disorder with anxiety symptoms," that Dr. Alfano states in his May 6, 2004 report that claimant "has been diagnosed as having Generalized Anxiety Disorder 300.2," does not compel relator's conclusion that Dr. Alfano was treating for a nonallowed condition or that Dr. Alfano's PTD opinion is premised upon a nonallowed condition.
 {¶ 48} Relator's argument fails to recognize that a degree of flexibility is important when dealing with psychiatric conditions. InState ex rel. Kroger Co. v. Indus. Comm. (1998), 82 Ohio St.3d 231
("Kroger II"), the court had occasion to summarize State ex rel. KrogerCo. v. Indus. Comm. (1997), 80 Ohio St.3d 483 ("Kroger I"), as follows:
 * * * In [Kroger I], the allowed psychiatric condition was "anxiety disorder with panic attacks." Throughout the numerous medical reports of record in that case, however, claimant's condition was variously referred to by her attending psychiatrist as "post-traumatic stress disorder (secondary to industrial accident)" and/or "dysthymia." Kroger objected when temporary total disability compensation was based on one of those alternative diagnoses. We rejected Kroger's argument, writing:
 "Compensable disability must arise exclusively from the claim's allowed conditions. Fox v. Indus. Comm. (1955), 162 Ohio St. 569 * * *. Ideally, the diagnosis contained on a disability form should mirror exactly the condition(s) allowed by the commission, and where it does not, closer examination may be warranted. Some degree of flexibility, however, seems particularly important when dealing with psychiatric conditions. As the Washington Supreme Court observed:
 "`Psychology and psychiatry are imprecise disciplines. Unlike the biological sciences, their methods of investigation are primarily subjective and most of their findings are not based on physically observable evidence.' Tyson v. Tyson (1986), 107 Wash.2d 72, 78 * * *
 "The United States Supreme Court, in a criminal case, made a similar comment: *Page 25 
 "`Psychiatric diagnosis in contrast, is to a large extent based on medical "impressions" drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient.' Addington v. Texas (1979), 441 U.S. 418, 430, 99 S.Ct. 1804, 1811 [.] * * *
 "The reference to the nature of psychological diagnoses does not imply that these diagnoses are freely interchangeable. Clearly, major depression and paranoia are not the same and, in this case, all three disorders, PTSD, Dysthymia, and anxiety disorder with panic attacks, are distinct. Nevertheless, we find that the multiple psychological diagnoses are not fatal to claimant's compensation application. There are three reasons for this.
 "First, regardless of the label attached, Dr. Blythe consistently referred to the same symptoms as being the cause of disability. Second, many of the symptoms are common to all three maladies. This largely explains why Dr. Blythe has had difficulty categorizing the disorder. Finally, Dr. Blythe has always related the relevant symptomatology to the industrial accident.
 "Cumulatively, this indicates that the debilitating symptoms are industrially related. This is not a situation in which diagnostic flexibility will allow a physician to surreptitiously treat a claimant for a nonindustrial ailment. The problem seems to rest solely on Dr. Blythe's understandable inability to affix a single diagnosis to symptoms that fit several categories. For these reasons, the commission's reliance on Dr. Blythe's reports is not an abuse of discretion * * *." Id. at 489-490[.] * * *
Id. at 233-234.
 {¶ 49} The magistrate also disagrees with relator's claim that Dr. Alfano's discussions of claimant's depression in his December 13, 2004 report compels the conclusion that Dr. Alfano's PTD opinion is premised upon a nonallowed condition. *Page 26 
 {¶ 50} Implicit in relator's argument is that depression cannot be a symptom of the allowed condition of the claim. It is perhaps important to note that Dr. Alfano never said that he was treating claimant for "Major Depressive Episode," the criteria for which is cited by relator in support of its argument. (Relator cites to DSM-IV at page 327 in its reply brief, at 6.)
 {¶ 51} Parenthetically, the magistrate notes that Dr. Alfano never stated nor suggested that claimant should be diagnosed with a mood disorder. Mood disorders are covered by DSM-IV at pages 317-392. Mood disorders include major depressive order, dysthymic disorder, bipolar disorders, and other conditions.
 {¶ 52} Relator seems to be confusing Dr. Alfano's discussion of symptomology with DSM-IV's definition of mood disorders. Clearly, Dr. Alfano's December 13, 2004 report need not be read to mean, as relator suggests here, that Dr. Alfano's PTD opinion is premised upon a nonallowed mood disorder.
 {¶ 53} The magistrate also disagrees with relator's claim that Dr. Alfano's discussion of claimant's sleep apnea in his May 6, 2004 report compels the conclusion that Dr. Alfano's PTD opinion is premised upon a nonallowed condition.
 {¶ 54} To begin, relator incorrectly suggests that claimant's sleep apnea is a psychological disorder. Relator improperly cites to DSM-IV page 597 to 601 which covers "other sleep disorders." However, at page 598, DSM-IV states: "By convention, sleep disturbances due to a Sleep-Related Breathing Disorder (e.g., sleep apnea) or to Narcolepsy are not included in this category (Criterion E)."
 {¶ 55} Again, in his May 6, 2004 report, Dr. Alfano wrote:
 [Three] Concentration: As stated above, this patient has very poor concentration, which leads to poor short-term and *Page 27 
long-term memory. He also has developed sleep apnea. He recently went for a new sleep study, and they determined that his sleep apnea scores had tripled, which indicates that the condition is getting more severe. This affects his sleeping, and therefore since he is not getting a good night's sleep, that lowers his concentration levels and affects his memory.
 {¶ 56} It is clear from Dr. Alfano's report that he was simply noting that claimant's sleep apnea can also be negatively affecting claimant's memory and concentration problems relating to his psychological condition.
 {¶ 57} While sleep apnea is indeed discussed by Dr. Alfano, the primary cause of claimant's "short-term memory problems" is attributed to the psychological condition being evaluated. Dr. Alfano's May 6, 2004 report can easily be read to indicate that it is the psychological condition, not the sleep apnea, that is causing PTD.
 {¶ 58} Based upon the foregoing analysis, the commission's reliance upon Dr. Alfano's reports to support PTD does not constitute commission reliance upon nonallowed conditions. Moreover, Dr. Alfano's reports are not equivocal nor internally inconsistent as relator has contended.
 {¶ 59} Because the SHO's order of August 24, 2005 determines, based upon Dr. Alfano's reports, that relator is unable to perform any sustained remunerative employment solely as a result of the psychological conditions of the claim, rejection of relator's challenges to Dr. Alfano's reports has the effect of sustaining the commission's PTD award regardless of relator's challenges to Dr. Franklin's report and the commission's analysis of the nonmedical factors. *Page 28 
 {¶ 60} The next issue is whether the commission abused its discretion by denying relator's motion for the exercise of continuing jurisdiction based upon alleged newly discovered evidence.
 {¶ 61} Newly discovered evidence can be the basis for the commission's exercise of its continuing jurisdiction under R.C. 4123.52. State exrel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454, 458.
 {¶ 62} Commission resolution R05-1-02 permits commission reconsideration under the following circumstances:
 (D)(1)(a) New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.
 {¶ 63} In its October 27, 2005 motion, relator alleged that disclosure of Dr. Nockowitz's reports after the SHO's order of August 24, 2005, constituted newly discovered evidence that claimant's disability is caused by a nonallowed condition, i.e., the "complex partial seizure disorder" that Dr. Nockowitz attributed to the industrial injury.
 {¶ 64} To reiterate, nonallowed medical conditions cannot be used to advance or defeat a claim for PTD compensation. Waddle, supra. Accordingly, that claimant suffers from a "complex partial seizure disorder," a condition not allowed in the claim, is irrelevant to the PTD determination. The commission properly determined that claimant is PTD due solely to the allowed psychological conditions in the claim. Under Waddle, that claimant may be further disabled due to complex partial seizure disorder is irrelevant to the *Page 29 
commission's PTD determination. Thus, the commission did not abuse its discretion in denying relator's October 27, 2005 motion for the exercise of continuing jurisdiction.
 {¶ 65} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1